SUCCESSION OF F. A. LUMSDEN.—OPPOSITION OF MRS. MARY ANN THOMPSON.

The laws establishing *the order* of successions, and those which treat of *their administration*, are essentially different.

An inheritance remains without an heir and in abeyance until the rightful heir accepts or rejects it, according to the Article 1026, C. C., giving him time for deliberation. Such an heir has but a residuary interest. C. C. 1066.

APPEAL from the Second District Court of New Orleans, *Morgan, J.* *C. Roselius and A. Lothrop for opponent and appellant.*—On the 8th September, 1860, Colonel F. A. Lumsden, his wife, and their only child, Frank Spedden Lumsden, all "perished by the happening of the same event," to wit: the sinking of the steamer Lady Elgin, on Lake Michigan.

On the 10th October, 1860, the succession of said Frank Spedden Lumsden was duly opened in the Second District Court of New Orleans, and Robert Spedden appointed administrator. On the same day, A. M. Holbrook filed his petition in said court, praying for the opening of the succession of Colonel Francis A. Lumsden, and to be appointed administrator of the same. One of the heirs of Frank Spedden Lumsden, to wit: Mary Ann Thompson, his grandmother, filed her opposition to the application of said Holbrook for the opening of another succession for the purpose of administering twice on the same property, and to the appointment of Holbrook as administrator. The court dismissed the said petition of opposition, rendered judgment decreeing the opening of the succession of Colonel F. A. Lumsden, and appointing Holbrook administrator, from which judgment said opponent has appealed.

We say the judgment decreeing the opening of the succession of F. A. Lumsden was illegal, for the following reasons:

That the judgment previously rendered, ordering the opening of the succession of Frank S. Lumsden, being a judicial recognition that he was the last survivor, according to the rule laid down in Articles 930, 931, and 933 of the Civil Code (the deceased family all being between the ages of fifteen and sixty), left no succession of the father upon which to administer, the same being merged in that of the son at the instant of the father's death. C. C. 934; 15 La. 527, and 12 Rob. 258.

Article 1115 C. C. reads as follows:

"The partner or partners of a commercial house, having accounts to render to the heirs of their deceased partner, can in no case be appointed curators to the vacant succession or that of the absent heir of the deceased. It must be given to a third person," etc.

Holbrook is therefore bound by his own admissions in the record, and the judgment of the court decreeing the opening of the succession of Frank Spedden Lumsden, and thereby estopped from claiming the administration of the succession of Colonel F. A. Lumsden. Hennen's Digest, p. 515, Nos. 2, 40 and 42.

*Robert Mott for Holbrook.*—The death of the Lumsdens must be considered as simultaneous; consequently, by legal interpretation, the parties all

being between the ages of fifteen and sixty, the mother and father died first.  C. C. 933.

There was a point of time in which there was a succession of F. A. Lumsden, and that succession was a vacant one,—did the death of young Lumsden fill the vacancy and close the succession, so that it ceased as a succession to exist, and all the rights and attributes of that succession were merged in the succession of young Lumsden ? We think not. ` If the succession was ascertained, then the rights of third parties vested, and can be exercised.

The elder Lumsden was a partner in the firm of Lumsden, Kendall & Co., printers and publishers of the Picayune newspaper; Holbrook, who applied for administration of the estate of F. A. Lumsden, was one of the members of that firm, as such, he was entitled to the curatorship in preference to the heir—for Article 1114, C. C., says that "the surving partner of the deceased in preference to the heir present or represented, unless the partnership be a commercial one," and commercial partnerships are declared by Article 2796, C. C., to be,

".1. For the purchase of any personal property and the sale thereof, either in the same state or changed by manufacture ;

2. For buying and selling any personal property whatever as factors or brokers ;

3. For conveying personal property for hire, in ships or other vessels."

The printing and publishing a newspaper does not come under either classification. *Heath* v. *Howell*, 15 La. 138. *Brown* v. *Hughes*, 2 An. 623. *McAuley* v. *Barnes*, 15 La. 427. *Parker* v. *Brashaer*, 16 La. 69. .

The partnership being proved, the reason exists why the surviving partner should administer, and why he should have charge of the estate of his deceased partner and settle and hand it over to the heir after the. payment of the debts ; and in the eye of the law that heir is the succession of the younger Lumsden, what right that the law guaranteed to Holbrook, could the death of young Lumsden destroy or set aside.

And what right has the grandmother of young Lumsden to oppose ? She does not claim a right to administer, nor is she a creditor. The expense of settling the estates may as well be had in the succession of the elder as the younger Lumsden.  C. C. 1051.  R. S. p. 339, ₰ 15.  Hennens Digest (new edition), p. 1470, Nos. 15, 16 and 20.

ILSLEY, J. The facts on which the questions in this case arise are these :  ·

On the 8th September, 1860, Colonel F. A. Lumsden, his wife, and their only child, Frank Spedden Lumsden, all perished by the happening of the same event, the sinking of the steamer Lady Elgin on` Lake Michigan.

On the 15th of the same month, Mrs. Mary Ann Thompson, the grandmother of Frank S. Lumsden, applied to the Second District Court of New Orleans for letters of administration in his succession.  Her application was opposed by Robert Spedden, the child's grandfather, and by A. M. Holbrook, the present appellee. The grandfather's opposition was sustained, and letters of administration were issued to him.

On the same day that Robert Spedden was appointed administrator, as

before stated, to wit: on the 10th October, 1860, the said A. M. Holbrook alleging himself to be a surviving partner of F. A. Lumsden, applied for letters of administration on his suuccession, which, notwithstanding the opposition of Mrs. Mary Ann Thompson, for reasons stated by her (which will be hereafter adverted to), were granted to him on the 20th of the same month.

The opposition of Mrs. Mary Ann Thompson to the application of A. M. Holbrook, to administer on F. A. Lumsden's estates, is based on the following grounds :

1. That it being conceded that Frank S. Lumsden survived his parents, and are their sole legal heir, that the property and effects left by said parties legally constitute but one succession, which succession is that of Frank S. Lumsden, already opened and in due course of administration in the Second District Court.

2. That, as heir of Frank S. Lumsden, she opposes the application of A. M. Holbrook to open the succession and administer on the same property, under the name of Francis A. Lumsden, as it will cause delay, incur additional costs, to the detriment of opponent, and is an illegal proceeding.

3. That, from the action taken by Holbrook, the allegations contained in his petition of opposition, and admissions in the succession of Frank S. Lumsden, he is precluded and estopped from opening a succession of Francis A. Lumsden upon the property belonging to the succession of Frank S. Lumsden, or administering upon the same.

Mrs. Mary Ann Thompson's counsel urge in this court, besides the grounds stated in the opposition, another ground, the disability of Holbrook to administer F. A. Lumsden's estate, because Holbrook and the deceased, at the time of his demise, were commercial partners ; but, as this was not a ground of opposition in the Court below, it will not be noticed here.

In support of the first ground of opposition, the appellant's counsel urges that the judgment ordering the opening of the succession of Frank S. Lumsden, left no succession of his father, whose sole heir he was, upon which to administer, the same being merged in that of the son at the instant of his father's death, and that the subsequent opening of the succession of the father presents a legal impossibility, as it is to decree that the same property can belong to two separate and distinct successions, and be administered upon by the administrators of the respective successions at the same time ; and he suggests, in illustration of his position, several reasons, which he deems conclusive, why the second succession was improperly opened. These reasons would be as cogent if applied to the opening of Frank S. Lumsden's succession, had that event taken place after the opening of his father's succession, which might have occurred even before the death of Frank S. Lumsden; and it therefore has no practical bearing on the principal question involved, which is, whether the succession of F. A. Lumsden became, by his son's death, so blended with and merged into the succession of the latter, as to lose its identity for administrative purposes. As this is the theory contended for by the appellant, let us test its accuracy ; and we know of no mode we can proceed more readily to do so, than by suggesting cases, which, if the thesis of

the opponent be founded on principle universal in its application, *would*
*show* its utter impracticability, if not *impossibility.*

Let us suppose, for the sake of argument, that Colonel Lumsden, instead of only one son and legal heir, had left several children and the issue of other pre-deceased children, all these descendants would certainly have been his legal heirs, and had they all perished by the same or a similar calamity, which overwhelmed Lumsden's family, all the different successions of the several heirs might have been, as was that of F. S. Lumsden, opened before that of the father, would the succession of Colonel Lumsden have become so merged in the successions of his numerous heirs? and its affairs so divided and split up, so as to adapt them to the fractional interest that each heir might have in the succession of Colonel Lumsden; and that, too, before it was known what each of these successions might claim, and before the realization of the distributive share of each?

Again, had the succession of Frank S. Lumsden consisted of mingled property derived from various sources, which might be actually the case, as we have nothing in the record to show in what it does consist, say from other successions, besides that of his father, could the several successions be so merged for administrative purposes with his own succession, as to draw into the vortex of these mixed administrations all the creditors and legatees of each of these several inherited successions?

As we apprehend this question, the fallacy of the opponent's theory, consists in the confounding two subjects which are entirely distinct in their nature—*i. e.* the law establishing the order of successions with that which treats of their administration. Each has its appropriate place in the text of the law.

There is, however, another question which needs solution, and that is, what immediate right the minor, Frank S. Lumsden, acquired by his father's death. Art. 940 C. C. holds his right in abeyance until he decides whether he accepts or rejects a succession, and that is the doctrine of the Roman law. Domat, referring to that law, says: "Since it often falls out that the inheritance remains for some time without a master, because he who ought to succeed is absent, or that he deliberates whether he shall accept or renounce the inheritance, (the faculty accorded to beneficiary heirs by Act. 1026, C. C.,) and that during this interval it may happen that some right may accrue to the succession, or that it may be engaged in new charges or other affairs. The said inheritance is therefore considered as holding the place of the master, and as representing the deceased to whom it belongs. Droit Civil Lib. 1. T. N. 1, §§ 1, 11, 14.

The interest of Frank S. Lumsden was merely a residuary one, and this could be only determined after his father's succession had been duly administered. See Art. 1066 C. C.; *Arthur P. Cochran,* tutor, 12 Rob. 41; *Audat, Curatrix* v. *Gilly,* 12 Rob., 323.

In what does the position of Mrs. Thompson differ from that of Frank S. Lumsden, so far as the necessity of a separate administration of F. A. Lumsden's succession is involved?

As to the judicial admission of Holbrook, relied on by the opponent to estop him from claiming the administration of Col. Lumsden's succession, we cannot see how it can possibly effect the exercise of that right,

6

There is no error in the judgment overruling Mrs. Thompson's opposition, and it is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, and that the appellant pay the costs of appeal.

JONES, J., absent.