MOORE, J.
hThe State of Louisiana Military Department appeals a partial summary judgment, as to liability only, in favor of Kim Bates, who sustained a trip-and-fall accident on the grounds of the Louisiana National Guard Armory in West Monroe, Louisiana. We affirm.

Factual and Procedural Background

On September 5, 2003, a contingent of Guardsmen was returning to Louisiana from a tour in Afghanistan. Ms. Bates, along with several family members, went to the National Guard Armory on Industrial Drive in West Monroe to greet her *22 niece’s husband, who was in the returning group.
According to her deposition, Ms. Bates had never been to the armory before. Her niece handed her a camera and asked her to take pictures when the Guardsmen got off the bus. The crowd was very large, and when the first vehicle (actually a station wagon, not a bus) turned off the road, the crowd started cheering and edging toward the street. Ms. Bates lifted the camera to her eyes and started moving with the crowd. Suddenly, she fell and hit the grass. At first she thought the crowd had shoved her over, but as she got up she discovered there was a line or wire stretched between two posts; it had tripped her and actually cut her legs. She saw other people tripping on the line, but nobody else fell.
Not wanting to disrupt the homecoming, Ms. Bates declined an offer to call an ambulance. However, she alleged that she sustained several injuries requiring medical attention for about a year and resulting in residual pain seven years later.
|2Ms. Bates’s father, Kenneth Eubanks, saw her fall. In deposition, he stated the line appeared to be a telephone wire or other cable about 2 inches off the ground, with no warning signs on or near it. He also stated he could not imagine why it was placed there.
Although the crowd at the homecoming was large, Ms. Bates offered no other depositions or affidavits from anyone else who saw her fall or described the line. She also offered no photographs of the line.
Ms. Bates and her husband filed this suit against the Louisiana National Guard Armory and the State of Louisiana Military Department in August 2004. Ms. Bates took a preliminary default in February 2005, but it was never confirmed. The state finally answered in September 2006, entering general denials and a request for jury trial.[1] The state took no further steps until 2009, when it filed notices to depose Ms. Bates, her husband, father and brother, but the depositions did not actually occur until February 2010.
In September 2010, Ms. Bates filed this motion for partial summary judgment as to liability. She attached the four depositions and argued that the line posed an unreasonable risk of harm of which the state had actual or constructive knowledge. She also argued that a plaintiff can be found free of fault for tripping over an unreasonably dangerous object in her path, as occurred in Nuckley v. Cox Cable New Orleans, 527 So.2d 414 (La.App. 4 Cir.), writ denied, 532 So.2d 115 (1988).
|oThe state opposed the motion, arguing that although under La. C.C.P. art. 966 C(2) the mover had the burden of proving no genuine issue of material fact, Ms. Bates had failed to show that she was free of fault. In support, it offered a portion of Ms. Bates’s deposition. The state offered no other summary judgment evidence.
The court held a hearing, which was not transcribed, in November 2010, and granted Ms. Bates’s motion in June 2011. The judgment stated merely that there was no genuine issue of material fact that the state was solely liable for the accident at issue. The state took this appeal.

Applicable Law

The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Samaha v. Rau, 2007-1726 *23 (La.2/26/08), 977 So.2d 880; Adams v. JPD Energy Inc., 45,420 (La.App. 2 Cir. 8/11/10), 46 So.3d 751, writ denied, 2010-2052 (La.11/12/10), 49 So.3d 892. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Sensebe v. Canal Indem. Co., 2010-0703 (La.1/28/11), 58 So.3d 441. A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B. After adequate discovery or after a case is set for trial, “a motion which shows 14that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. art. 966 C(l). When the motion for summary judgment is made and supported as provided in Art. 966, the adverse party “may not rest on the mere allegations or denials of his pleading,” but his response, by affidavits or other proper summary judgment evidence, “must set forth specific facts showing that there is a genuine issue for trial.” La. C.C.P. art. 967 B; Cheramie Servs. Inc. v. Shell Deepwater Prod. Inc., 2009-1633 (La.4/23/10), 35 So.3d 1053. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. Id. Speculation that a factfinder might disbelieve the mover’s witnesses will not defeat a properly supported motion for summary judgment. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Babin v. Winn-Dixie La. Inc., 2000-0078 (La.6/30/00), 764 So.2d 37.
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Sensebe v. Canal Indem. Co., supra; Tillman v. Eldridge, 44,460 (La.App. 2 Cir. 7/15/09), 17 So.3d 69.
A landowner owes a duty to a plaintiff to discover any unreasonably dangerous condition, and either to correct it or warn of its existence. La. C.C. art. 2317; Eisenhardt v. Snook, 2008-1287 (La.3/17/09), 8 So.3d 541. In determining whether a condition is unreasonably dangerous, courts have adopted a four-part test, requiring consideration of (1) the utility of the complained-of condition, (2) the likelihood and magnitude of the harm, (3) |5the cost of preventing the harm, and (4) the nature of the plaintiffs activities in terms of its social utility, or whether it is dangerous by nature. Dauzat v. Curnest Guillot Logging Inc., 2008-0528 (La.12/2/08), 995 So.2d 1184. However, the landowner generally has no duty to protect against an open and obvious hazard. Eisenhardt v. Snook, supra, and citations therein. The degree to which a danger may be observed by a potential victim is one factor in the determination of whether a condition is unreasonably dangerous. Id.; Williams v. Ruben Residential Properties, 46,040 (La.App. 2 Cir. 3/2/11), 58 So.3d 534.

Discussion

By two assignments of error, the state urges that summary judgment was inappropriate because Ms. Bates failed to establish that there was no genuine issue of material fact that she was free from fault in the accident. It argues that by her own admission, Ms. Bates “had a camera up in front of her face to take pictures” and “wasn’t looking where she was stepping as she moved along.” Citing La. C.C. art. 2317.1 and R.S. 9:2800, it argues that not every defect in the premises gives rise to liability. Moore v. Oak Meadows Apart *24 ments, 43,620 (La.App. 2 Cir. 10/22/08), 997 So.2d 594; Monson v. Travelers Property & Cas. Ins. Co., 06-921 (La.App. 5 Cir. 4/24/07), 955 So.2d 758. Further, the wire was just as obvious to Ms. Bates in the exercise of reasonable care as it was to the landowner, thus absolving the latter of any liability. Pitre v. Louisiana Tech Univ., 95-1466 (La.5/10/96), 673 So.2d 585, cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996); Hutchinson v. Knights of Columbus, Council No. 5747, 2003-1533 (La.2/20/04), 866 So.2d 228. The state contends that Ms. Bates failed to use even ordinary care, and concludes that “all doubt must be resolved in the opponent’s favor,” or against granting the summary judgment. McAdams v. Willis Knighton Med. Ctr., 38,181 (La.App. 2 Cir. 12/19/03), 862 So.2d 1186, and citations therein.
The only description of the wire comes in the deposition of Ms. Bates’s father, Kenneth Eubanks:
I just knew it was some kind of cable, but I didn’t know — I didn’t know what it was. * * ⅜ I can’t believe somebody would leave a — with that many people gathered up, they would have some kind of cable or something like that for somebody to trip over[.] * * * The way it was, it was out of the ground. It was above the ground. It was — it wasn’t just laying [sic ] on the ground, it seemed like it was two inches rise in it above the ground. * * * It was down close to the ground.
Ms. Bates did not see the wire; she stated, “I don’t know what the wire was there for. I know it was a wire. It cut through my leg.” She also stated that after she fell, she noticed other people stumbling over it.
This evidence shows that Ms., Bates tripped on a taut wire suspended a mere two inches above the grassy ground. In common experience, such a wire in such a place is not easy to see, even in the exercise of normal caution. Its latency, and the fact that other people were stumbling on it, strongly support the conclusion that the wire was unreasonably dangerous. After the accident, Mr. Eubanks looked at the wire and could not discern its purpose, if any. A large crowd of well-wishers had come to the Armory to greet returning Guardsmen; the social utility of their presence is obvious. In short, Ms. Bates’s showing satisfied most of the elements to prove an unreasonable risk of harm, under Dauzat v. Curnest Guillot Logging, supra, |7and negated the additional element that the condition was open and obvious, under Eisenhardt v. Snook, supra. We find that this showing constituted proper support for the motion under La. C.C.P. art. 966, and shifted the burden to the state to adduce specific facts that would create a genuine issue for trial. La. C.C.P. art. 967 B.
In response, the state filed the first nine pages of Ms. Bates’s deposition (which Ms. Bates had already filed in its entirety), arguing that because she was trying to take a picture, she was not using normal caution and, at any rate, the wire was open and obvious. However, Ms. Bates’s deposition establishes the exact opposite, that the wire was not open and obvious. Any evidence of the purpose of the wire, its social utility, or the cost of removing it when the public was present — all relevant factors under Dauzat — are conspicuously absent from the state’s showing. The state primarily asks this court to indulge the speculation that at a full trial, a jury might choose to disbelieve Ms. Bates and her father, and conclude that the wire did not pose an unreasonable risk of harm. Such speculation does not suffice to defeat a properly supported motion. Jones v. *25 Estate of Santiago, supra; Babin v. Winn-Dixie La., supra.
Finally, the state somewhat poignantly admits that counsel herself has been persistently unable to communicate with the Armory’s ranking officer and his assistant, as both have been deployed and redeployed to Afghanistan. We are sensitive to counsel’s difficult position, and suggest that these circumstances might have supported a motion for continuance, or perhaps some other relief under the Service-members Civil Relief Act, 50 [gU.S.C.App. § 520, et seq. The fact remains, however, that over six years after suit was filed, and over two months after the motion for summary judgment, the state produced no specific facts that would create a genuine issue for trial. On this record, Ms. Bates’s motion for partial summary judgment is properly supported and she is entitled to judgment as a matter of law. The judgment is affirmed.

Conclusion

For the reasons expressed, the partial summary judgment is affirmed. Any unpaid costs are to be assessed at the conclusion of trial, pursuant to La. R.S. 18:5112.
AFFIRMED.

. The state also filed an exception of no cause of action on grounds that the named defendant, "Louisiana National Guard Armory,” was merely the name of the building, not an entity capable of being sued, but the record shows no ruling on this.