GASKINS, J.
liThe intervenors in this matter, Pearl Hatter Biggs, Dock R. Hatter, Jr., Josez-ette Josephine White, and Bobbie Jean Hatter Smith, filed an application for supervisory writs from a trial court decision denying their motion for summary judgment against Isaac Curtis Hatter, Jr., Carolyn Hatter Curry, and Steno Hatter Gillis, and their motion for summary judgment against Lewis Louisiana Properties, LLC (“LLP”). In their motions for summary judgment, the intervenors asserted that the judgment of possession in favor of Isaac Curtis Hatter, Jr., and Carolyn Hatter Curry concerning a disputed piece of property in Claiborne Parish should be declared an absolute nullity due to fraud and ill practices and the intervenors should be awarded attorney fees and costs. The intervenors also assert that they should be declared the owners of the property because they have better title than LLP. This court granted the writ application, ordered the lodging of the record and docketed the matter for decision. For the following reasons, we reverse the trial court judgment and remand to the trial court for further proceedings.
FACTS
The pertinent facts in this matter are found in the prior appeal, Biggs v. Hatter, 45,066 (La.App.2d Cir.3/3/10), 32 So.3d 355, and are set forth below:
Isaac Hatter, Sr. (Isaac Sr.) was married to Steno Hatter (Steno), now Gillis. They had two children, Isaac Hatter, Jr. (Isaac Jr.), and Carolyn Hatter Curry (Carolyn). Isaac Sr. and Steno were divorced in California on November 10, 1950. Isaac Sr. was living in California at the time of his death on April 21, 2003.
On May 7, 2003, Isaac Jr. opened an intestate succession for his father in California. However, Isaac Sr. had executed a will on December 20, 2002. Isaac Sr. appointed his brother, Dock Hatter, Jr. (Dock), and his sister, Pearl Hatter Biggs (Pearl), as his personal representatives. After payment of his debts, he left the money in his bank accounts to be distributed evenly between his son, Isaac Jr., phis daughter, Carolyn, and his living brother and sisters, Dock, Pearl, Bobbie Jean Hatter Smith, and Beulah Hatter Mouton. [Beulah Hatter Mouton died during the course of the proceedings. Josezette Josephine White was substituted for her.] He made dispositions of personal property and then made the following bequest concerning immovable property:
I direct all property owned by me, located in Homer, Louisiana, Claiborne parish [sic] known as the Wake Hatter Estate be divided equally between my living brother and sisters, Dock Hatter, Jr., Beulah Hatter Mouton, Pearl Hatter Biggs and Bobbie Jean Hatter Smith. I direct Dock R. Hatter, Jr., and Pearl Hatter Biggs to oversee and make all final decisions *1152 concerning administration of this property. I direct one lot located in Pine Bluff, Arkansas to Dock R. Hatter, Jr.
On September 19, 2003, Pearl filed a petition in California to probate the will. On January 14, 2004, Isaac Jr. filed a contest to the will, claiming that it was procured by fraud. On November 5, 2004, Isaac Jr. was removed as administrator of his father’s succession and Pearl was named the executrix.
On December 28, 2005, Steno, Isaac Jr., and Carolyn filed a petition in Claiborne Parish for possession of Isaac Sr.’s immovable property, claiming that he died intestate and that his children were his only heirs. The only property listed as owned by the estate was that in Claiborne Parish and was described as follows:
Undivided interest in and to the SE 1/4 and the SE 1/4 of the NE 1/4, LESS & EXCEPT the North 13 1/3 acres of section 29, Township 23 North, Range 6 West, Claiborne Parish, Louisiana, containing 183 and 2/3 acres, more or less, together with all and singular improvements thereon and all rights thereunto belonging.
An interest in and to the THE MINERAL LEASE in and to the TIG-NER# 1-1, the TIGNER # 2, and the TIGNER #3 situated on the above described property.
The court in Claiborne Parish signed a judgment of possession on January 31, 2006, putting Isaac Jr. and Carolyn in possession of the Claiborne Parish property. The judgment was filed the next day. Isaac Jr. and Carolyn sold their interest in the property to Lewis Louisiana Properties, LLC- (LLP) on October 23, 2006, for approximately $90,000.
|SLLP then sought to recover mineral royalty payments from Petro-Hunt LLC, claiming entitlement to a 58 percent undivided interest in the property. On June 27, 2007, in another proceeding not at issue here, Petro-Hunt filed a concursus petition to deposit into the registry of the court $200,503.75, payable to any or all of the defendants claiming entitlement to royalties from the property sold by Isaac Jr. and Carolyn to LLP. LLP filed a separate lawsuit for partition by licitation. Pearl, Dock, Josezette Josephine White, and Bobbie Jean Hatter Smith filed for an injunction in that case to bar the partition until their rights of ownership to the property, as opposed to those of LLP, could be determined.
On July 11, 2007, Pearl, on behalf of the succession of Isaac Sr., filed a petition for ancillary probate of a testament probated in another state. The court in Claiborne Parish ordered that Pearl be confirmed as the testamentary executrix after complying with the requirements provided by law.
Shortly thereafter, on July 30, 2007, Pearl filed the initial pleading in this case as executrix of her brother’s estate, concerning the immovable property at issue here. She asserted a petitory action and sought to annul the judgment of possession, to cancel the judgment of possession from the conveyance records, to cancel the cash sale deed, and to collect damages. This pleading alleged that the judgment of possession was obtained by fraud and ill practices under La. C.C.P. art. 2004. Isaac Jr., Carolyn, and LLP were named as defendants. A petition of intervention was filed on .October 24, 2007, by Pearl, in her individual capacity, Dock, Beulah Hatter Mouton, and Bobbie Jean Hatter Smith, expressing their desire to intervene and join the suit filed by Pearl on behalf of Isaac Sr.’s succession, demanding the *1153 same relief against the same defendants. On April 14, 2008, the plaintiffs filed a second amended and supplemental petition making further allegations regarding fraudulent actions by the defendants.
On April 15, 2008, LLP filed an answer to the petitory action, claiming that it was an innocent third party that relied on the public records and is the rightful owner of the disputed Claiborne Parish property. [Footnotes omitted.]
A peremptory exception of prescription was filed by LLP on September 5, 2008, against Pearl, as executrix of the estate of Isaac Sr., asserting that under La. R.S. 9:5630, any action by a successor not recognized in a judgment of |4possession is prescribed two years after the judgment becomes final. LLP also argued that the petition of intervention filed by Pearl, Dock, Josezette Josephine White, and Bobbie Jean Hatter Smith was not a proper intervention because it did not assert ownership of the disputed property. LLP argued that this pleading did not interrupt prescription.
The trial court granted the exception of prescription. The succession and the in-tervenors appealed. This court reversed the trial court ruling. See Biggs v. Hatter, supra. We found that Pearl’s petition, filed in her capacity as succession representative, interrupted the two-year prescriptive period under La. R.S. 9:5630. We also determined that the intervention by Pearl, in her individual capacity, and by her siblings, was a proper intervention and was also filed within the two-year prescriptive period. The matter was remanded for further proceedings.
During the course of the proceedings below, on September 24, 2008, a judgment of possession was signed by Judge Jenifer Ward Clason, recognizing the intervenors as Isaac Sr.’s sole heirs and legatees and owners of his undivided interest in the Wake Hatter Estate, which was described as the same piece of property conveyed in the judgment of possession obtained by Isaac Jr. and Carolyn, and sending the siblings into possession of the decedent’s portion of the property.
In April 2010, LLP filed a reconventional demand against the intervenors attacking the judgment of possession in favor of the intervenors entered on September 24, 2008. LLP asserted that the disputed property is not in Homer, but in Colquitt, Louisiana. LLP points out that Isaac Jr. and Carolyn had a | judgment of possession to the property in 2006 and sold it to LLP in October 2006. LLP contends that the judgment of possession in favor of the intervenors places a cloud on its title and sought a judgment to reform the interve-nors’ judgment of possession to remove any reference to the disputed property.
On September 5, 2008, LLP had filed a motion for summary judgment, claiming that the public record doctrine protected LLP from unfiled documents such as the will in this case which the intervenors assert was probated in California. In April 2010, LLP filed a supplemental memorandum to its motion for summary judgment against the estate of Isaac Sr., adding the intervenors. LLP asserted that Isaac Sr.’s will directed that all property owned by Isaac Sr. located in Homer, Louisiana be given to the intervenors. LLP contended that this did not address the 186-acre tract which is the subject of this lawsuit, which is located in Colquitt, Louisiana, approximately 12 miles from Homer. LLP also urged that there was no clause in the will directing that the residue of the estate be left to any particular person and therefore, the residue of the estate would pass through the laws of intestacy and vest in Isaac Sr.’s children, Isaac Jr. and Carolyn.
*1154 In their opposition to LLP’s motion for summary judgment, the intervenors asserted that LLP’s arguments regarding “good faith” and the public records doctrine are not applicable to succession proceedings.
On June 4, 2010, the intervenors filed a motion for summary judgment against Isaac Jr., Carolyn, and Steno. The inter-venors maintain that there is no dispute of fact that the judgment of possession obtained by Isaac Jr. and Carolyn, asserting that Isaac Sr. did not have a will, was obtained through fraud |fiand ill practices. The intervenors sought to have the judgment of possession in favor of Isaac Jr. and Carolyn erased and cancelled from the conveyance records of Claiborne Parish. The intervenors also sought to recover attorney fees and costs.
On December 3, 2010, the intervenors filed a motion for summary judgment against LLP, arguing that they filed a petitory action in this matter and that they have better title than LLP. The interve-nors state that their ownership stems from the testament of Isaac Sr. and that the clear intent of the will was to convey to them the piece of property in dispute here. They urge that the property has been known for more than 70 years as the Wake Hatter Estate. It is described on the Claiborne tax assessor’s plat of the parish as the Wake Hatter Estate. They assert that the property is widely known in the community as the Wake Hatter Estate. Pearl maintained in her deposition that the property taxes were paid in Homer.
On July 8, 2011, the trial court heard argument on all three motions for summary judgment and denied all three motions without reasons. The intervenors made an application for supervisory review to this court, urging that the trial court erred in denying their motions for summary judgment. This court granted the writ application and docketed the matter for decision.
MOTION FOR SUMMARY JUDGMENT AGAINST ISAAC HATTER, JR., CAROLYN HATTER CURRY, AND STENO HATTER GILLIS
The intervenors argue that the judgment of possession in favor of Isaac Jr. and Carolyn was obtained through fraud and ill practices. They assert that this issue is not disputed. They maintain that the record clearly shows that, because 17Isaac Jr. unsuccessfully contested his father’s will in California, he was aware of his father’s testament that bequeathed the Wake Hatter Estate to the intervenors. In spite of that fact, with their acquiescence, Steno, the mother of Isaac Jr. and Carolyn, filed a petition in Claiborne Parish on behalf of her children stating that Isaac Sr. died intestate and that as his only heirs, Isaac Jr. and Carolyn were entitled to ownership of the property. The intervenors contend that, by selling the property, Isaac Jr. and Carolyn ratified the fraudulent acts of their mother in obtaining the judgment of possession. The intervenors urge that their motion for summary judgment against Isaac Jr. and Carolyn should be granted and they should be awarded attorney fees and costs. They also contend that the judgment of possession in favor of Isaac Jr. and Carolyn and the sale to LLP should be cancelled from the conveyance records. This argument has merit.
Legal Principles
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Palmer v. Martinez, 45,318 (La.App.2d Cir.7/21/10), 42 So.3d 1147, writs denied, 2010-1952, 2010-1953, 2010-1955 (La.11/5/10), 50 So.3d 804, 805. *1155 A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. In re Clement, 45,454 (La.App.2d Cir.8/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show 1 sthat there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Palmer v. Martinez, supra.
When the motion for summary judgment is made and supported as provided in La. C.C.P. art. 966, the adverse party “may not rest on the mere allegations or denials of his pleading,” but his response, by affidavits or other proper summary judgment evidence, “must set forth specific facts showing that there is a genuine issue for trial.” If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B); Bates v. Louisiana National Guard Armory, 46,892 (La.App.2 Cir.1/25/12), 86 So.3d 21.
A final judgment obtained by fraud and ill practices may be annulled. La. C.C.P. art. 2004 provides:
A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.
The historical development of this provision established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. The Louisiana Supreme Court has accepted those two requirements as the necessary elements in establishing a nullity action under La. C.C.P. art. 2004. See Gladstone v. American Automobile Association, Inc., 419 So.2d 1219 (La. 1982); Wright v. Louisiana Power & Light, 2006-1181 (La.3/9/07), 951 So.2d 1058.
An ex parte judgment of possession may be annulled for fraud and ill practices where affidavits presented to the court to obtain the judgment contain false information to the effect that the decedent left no will. See Succession of Hearn, 412 So.2d 692 (La.App. 2d Cir.1982), writ denied, 415 So.2d 215 (La.1982); Succession of Davis, 347 So.2d 906 (La.App. 3d Cir.1977). See also West v. Gajdzik, 425 So.2d 263 (La. App. 3d Cir.1982), writ denied, 428 So.2d 475 (La.1983); Succession of Blackwell, 98-50 (La.App. 3d Cir.5/6/98), 713 So.2d 625, writ denied, 98-1983 (La.10/30/98), 727 So.2d 1169; David v. David, 347 So.2d 885 (La.App. 3d Cir.1977).
Discussion
In support of their motion for summary judgment against Isaac Jr. and Carolyn, the intervenors filed numerous documents and affidavits including a copy of a sheriffs deed filed July 2, 1979, executing a partition by licitation whereby Isaac Sr. and several family members, including the intervenors, were awarded various interests in the disputed property. The inter-venors filed a judgment of possession entered in July 2003, giving Isaac Sr. the *1156 interest in the disputed property formerly owned by Lela Renfrew Hatter Thompson. The intervenors included the 1950 judgment of divorce between Isaac Sr. and Steno, Isaac Sr.’s will, the contest of the probate of the will filed by Isaac Jr. in California in January 2004, and a California judgment dated November 8, 2004 stating that Isaac Sr.’s will had been proved and appointing Pearl as the administrator. The supporting documents also included the February 2006 | ^petition for possession filed by Steno on behalf of Isaac Jr. and Carolyn, a copy of the January 31, 2006 judgment of possession putting Isaac Jr. and Carolyn in possession of the disputed property, the October 23, 2006 cash sale deed of the property from Isaac Jr. and Carolyn to LLP and a September 24, 2008 judgment of possession of the disputed property in favor of the inter-venors. The intervenors further filed a verifying affidavit by Isaac Jr. stating that in December 2005, he hired Daniel W. Newell to handle his father’s succession, that he reviewed the succession documents and requested that his mother, Steno, sign the affidavit “to prevent me from having to miss work to find a notary public.” Isaac Jr. stated that he was fully aware of all proceedings and requested that his mother sign on his behalf.
Isaac Jr., Carolyn, and Steno filed nothing in opposition to the motion for summary judgment. The curator appointed to represent them at the hearing on the motions for summary judgment adopted the arguments made by LLP. No brief has been filed in this court on their behalf in opposition to the motion for summary judgment against them.
The intervenors have established that Isaac Jr. knew that a will existed, that his claim in California was unsuccessful to have the will declared a nullity, and that the will had been probated in California, disposing of the property in dispute in this matter. Yet after his efforts to nullify his father’s will failed, he, his sister, and his mother caused a petition to be filed in Claiborne Parish stating that Isaac Sr. died intestate, left only Isaac Jr. and Carolyn as his heirs, that his only property included the land at issue in this case. On the basis of this information they knew to be false, Isaac Jr. and Carolyn obtained a judgment Inputting Isaac Jr. and Carolyn in possession of the disputed property. They then sold the property to LLP.
Based upon this record, the intervenors have shown that the judgment of possession entered in favor of Isaac Jr. and Carolyn was obtained by fraud and ill practices. The intervenors who filed this motion for summary judgment have shown that there is no genuine issue as to material fact, and that they are entitled to judgment as a matter of law. The trial court erred in denying the motion for summary judgment against them. We reverse that portion of the trial court judgment and declare that the judgment of possession in favor of Isaac Jr. and Carolyn is null due to fraud and ill practices. We order that the judgment of possession be cancelled from the conveyance records.
The intervenors sought to recover reasonable attorney fees and costs in connection with having the judgment of possession in favor of Isaac Jr. and Carolyn declared null for fraud and ill practices. We remand the matter to the trial court to allow the entry of evidence on the issue of reasonable attorney fees and costs.
MOTION FOR SUMMARY JUDGMENT AGAINST LEWIS LOUISIANA PROPERTIES, LLC
The intervenors assert that the trial court should have granted their motion for summary judgment against LLP. They urge that LLP’s “good faith” and public *1157 records doctrine arguments are not applicable to successions. This argument has merit.
Legal Principles
The public records doctrine in this state was revised by Acts 2005, No. 169, § 1, which became effective on July 1, 2006. The sale in this matter to LLP |1?took place on October 23, 2006, and is governed by the revised provisions. La. C.C. art. 3338 provides:
The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
(1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
(2) The lease of an immovable.
(3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
(4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.
The recordation of an instrument does not create a presumption that the instrument is valid or genuine. La. C.C. art. 3341. A third person is a person who is not a party to or personally bound by an instrument. La. C.C. art. 3343.
The public records doctrine is founded upon our public policy and social purpose of assuring the stability of land titles. Camel v. Waller, 526 So.2d 1086 (La.1988). The doctrine does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. It is essentially a negative doctrine. Third persons are not allowed to rely on what is contained in the public records but can instead rely on the absence from the public record of those interests that are required to be recorded. Camel v. Waller, supra. Simply put, an instrument in writing affecting immovable property which is not recorded is null and void except | ^between the parties. Cimarex Energy Co. v. Mauboules, 2009-1170 (La.4/9/10), 40 So.3d 931.
However, there are exceptions to the public records doctrine. One of those exceptions is inheritance rights. It has been consistently held in the jurisprudence that the law of registry is inapplicable where the ownership of, or claim affecting, immovable property has been acquired by inheritance and title has become vested by operation of law. See Long v. Chailan, 187 La. 507, 175 So. 42 (1937); Jackson v. D'Aubin, 338 So.2d 575 (La.1976); Crozat v. Lousiana Coastal VII, LLC, 2001-2404 (La.App.4th Cir.9/11/02), 830 So.2d 319, writs denied, 2002-3100, 2002-3103 (La.2/21/03), 837 So.2d 631; Vaughan v. Housing Authority of New Orleans, 80 So.2d 561 (La.App.Orleans 1955); Succession of Rosinski, 158 So.2d 467 (La.App. 3d Cir.1963); Knighten v. Ruffin, 255 So.2d 388 (La.App. 1st Cir.1971), writs denied, 260 La. 399, 459, 256 So.2d 288, 442 (La.1972). See also William V. Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tulane Law Review 491, 505 (1964-1965). The courts have recognized a right to property obtained through a succession even where that interest was omitted from a judgment of possession that was filed in the public records and relied upon by a third party. See Crozat v. Lousiana Coastal VII, LLC, supra. The recent revision of the registry laws does not address real and personal rights affecting immovables created by op *1158 eration of law. See Michael Palestina, Of Registry: Louisiana’s Revised Public Records Doctrine, 53 Loyola Law Review 989 (2007).
La. R.S. 9:5630 provides:
A. An action by a person who is a successor of a deceased person, and who has not been recognized as such in the judgment of 114possession rendered by a court of competent jurisdiction, to assert an interest in an immovable formerly owned by the deceased, against a third person who has acquired an interest in the immovable by onerous title from a person recognized as an heir or legatee of the deceased in the judgment of possession, or his successors, is prescribed in two years from the date of the finality of the judgment of possession.
B. This Section establishes a liberative prescription, and shall be applied both retrospectively and prospectively; however, any person whose rights would be adversely affected by this Section, shall have one year from the effective date of this Section within which to assert the action described in Subsection A of this Section and if no such action is instituted within that time, such claim shall be forever barred.
C. “Third person” means a person other than one recognized as an heir or legatee of the deceased in the judgment of possession.
D. For the purposes of this Section, after thirty years from the date of recor-dation of a judgment of possession there shall be a conclusive presumption that the judgment was rendered by a court of competent jurisdiction.
This article allows successors of a deceased person not recognized in a judgment of possession to assert an interest in an immovable formerly owned by the deceased, against a third person who has acquired an interest in the immovable by onerous title from a person recognized as an heir or legatee of the deceased in the judgment of possession, or his successors. The existence of this provision demonstrates that the public records doctrine will not be a bar to claims against third person for title to immovable property where successions are involved if the action is brought within the applicable time limits.
Discussion
In this case, LLP argues that the intervenors failed to file their California judgment in the public records in Claiborne Parish prior to the purchase of the land by LLP, and therefore, under the public records doctrine, LLP is entitléd to 11Brely on the absence of that filing. As outlined above, inheritance rights vested by operation of law are an exception to the public records doctrine. The intervenors in this case acted timely to preserve and enforce their inheritance rights after discovering the efforts of Isaac Jr. and Carolyn to usurp the intervenors’ title to the property. They filed against all parties within two years of the judgment of possession in favor of Isaac Jr. and Carolyn in accordance with La. R.S. 9:5630. Therefore, the public records doctrine does not operate to preserve any rights to this property that LLP claims to have acquired from Isaac Jr. and Carolyn through their fraudulently obtained judgment of possession.
LLP also argues that there is a genuine issue of material fact concerning the description of the property in this matter. They contend that the. will conveys property in Homer, Louisiana, while the legal description of the property they purchased is located near Colquitt, Louisiana. In support of their motion for summary judgment against LLP, the intervenors *1159 supplied a map of Section 29, Township 23, Range 6, in Claiborne Parish which contains property labeled the “Wake Hatter Estate.” This is the same term used in the decedent’s will. The pertinent part of the description of the property conveyed to LLP is:
Undivided interest in and to the SE 1/4 and the SE 1/4 of the NE 1/4, LESS & EXCEPT the North 13 1/3 acres of section 29, Township 23 North, Range 6 West, Claiborne Parish, Louisiana, containing 183 and 2/3 acres, more or less, together with all and singular improvements thereon and all rights thereunto belonging. [Emphasis supplied.]
The map filed by the intervenors shows that the property labeled as the “Wake Hatter Estate” excludes the north 13 1/3 acres. The intervenors attached to their motion several deeds showing the chain of title to the property described in both judgments of possession in this matter. A portion of a deposition from |1fiPearl Hatter Biggs that was admitted stated that Isaac Sr. owned only one piece of property in Louisiana which was his interest in the Wake Hatter Estate. Also attached to the motion for summary judgment are affidavits from Pearl Hatter Biggs and Dock Hatter. Those portions of the affidavits not excluded by the trial court stated that the tax notices on this property are sent from Homer, Louisiana and that Colquitt is a small community and not a town.
In this case, the intervenors have provided documentation to show that the property described in the judgment of possession obtained by Isaac Jr. and Carolyn and then conveyed to LLP was the Wake Hatter Estate. This was the same property conveyed to the intervenors in Isaac Sr.’s will and upon which the intervenors also obtained a judgment of possession. LLP has argued that there is a dispute as to the description of the property, but has failed to show any proof that the property described in the judgments of possession obtained by the parties in this matter is a different piece of property from the Wake Hatter Estate conveyed in the will of Isaac Sr. Based on the record, there is no genuine issue of material fact regarding the property description in this case.
We find that the trial court erred in failing to grant summary judgment in favor of the intervenors against LLP. As set forth above, the judgment of possession obtained by Isaac Jr. and Carolyn is null because it was obtained by fraud and ill practices. Because the intervenors’ title to the property was an inheritance right and vested by operation of law, the public records doctrine provides no protection to LLP’s claim to ownership of the property through the purchase from Isaac Jr. and Carolyn, who were not the rightful owners. There is no dispute as to the description of the property conveyed in Isaac Sr.’s will. 11/There is no genuine issue of material fact that the intervenors are the rightful owners of the property.
We are cognizant that LLP filed a re-conventional demand in the trial court against the intervenors, based on its argument that the property conveyed in the will was not the property described in the judgment of possession obtained by Isaac Jr. and Carolyn and sold to LLP. That claim has been considered and disposed of in these proceedings, rendering LLP’s re-conventional demand moot.
CONCLUSION
For the reasons stated above, we reverse the trial court judgment denying the motion for summary judgment by the in-tervenors against Isaac Hatter, Jr., Carolyn Hatter Curry, and Steno Hatter Gillis, and the motion for summary judgment against LLP. We grant the motions for summary judgment and find that the in- *1160 tervenors are the owners of the property in this matter. We order that the judgment of possession in favor of Isaac Hatter, Jr. and Carolyn Hatter Curry be can-celled from the conveyance records. We also order that the sale of the property from Isaac Hatter, Jr. and Carolyn Hatter Curry to LLP be cancelled from the conveyance records. We remand the matter to the trial court for consideration of reasonable attorney fees and costs for the in-tervenors in connection with having the judgment of possession in favor of Isaac Hatter, Jr. and Carolyn Hatter Curry declared null for fraud and ill practices. Costs in this 11Rcourt are assessed one-half to Isaac Hatter Jr., Carolyn Hatter Curry, and Steno Hatter Gillis, and one-half to LLP.
REVERSED; REMANDED FOR FURTHER PROCEEDINGS.