171 So. 70

Succession of COCO.

No. 33893.

Nov. 4, 1936.

Couvillon & Couvillon, of Marksville, for appellants.

Lester L. Bordelon, of Marksville, for appellee.

ROGERS, Justice.

Albert Dominique Coco died intestate, leaving as his sole legal heirs two broth-

ers and two sisters. Lestan L. Coco, the elder brother, applied for the appointment as administrator, and, pending the publication of his application, as temporary administrator of the succession. His application to be appointed temporary administrator was opposed by Jules A. Coco, the other brother, and by Mrs. Eliza Coco Woodruff, one of the sisters. After due hearing the judge of the district court appointed Lestan L. Coco as temporary administrator and ordered the publication of his application as permanent administrator. This application was also unsuccessfully opposed by Jules A. Coco, who sought the appointment for himself, and Mrs. Eliza Coco Woodruff. The opponents appealed from the judgment, but before their appeal could be heard Lestan L. Coco died. Later, the appeal was dismissed, without prejudice to any right which Jules A. Coco might have to be appointed administrator of the succession. Succession of Coco, 183 La. 517, 164 So. 326.

Immediately upon the death of Lestan L. Coco, his son A. Blumes Coco applied to be appointed temporary administrator of the succession of his uncle Albert D. Coco. His application was granted and he was appointed as such temporary administrator on a bond of $69,000. In his application to be appointed temporary administrator, A. Blumes Coco also prayed for his appointment as permanent administrator, and his application was ordered published according to law.

Jules A. Coco and Mrs. Eliza Coco Woodruff filed a rule to vacate the appointment of A. Blumes Coco as temporary administrator on numerous grounds, among which was that A. Blumes Coco was not a beneficiary heir of Albert D. Coco, but that Jules A. Coco was, and, as such, entitled to the office. The rule was dismissed and the appointment of A. Blumes Coco as temporary administrator was maintained by the judge of the district court. Jules A. Coco and Mrs. Eliza Coco Woodruff then applied to this court for writs of certiorari and prohibition. A rule nisi with a stay order was granted, but the order was later modified so as to permit A. Blumes Coco, temporary administrator, to operate the plantation and mercantile establishment of the deceased until the final disposition of the application for writs, upon a bond of not less than $70,000.

On the original hearing of the rule nisi this court held that A. Blumes Coco was not a beneficiary heir of Albert D. Coco, but that Jules A. Coco was such an heir. And the court, in accordance with that holding, set aside the appointment of A. Blumes Coco as temporary administrator and ordered the appointment forthwith of Jules A. Coco as administrator of the succession of Albert D. Coco, on giving bond in the sum of $70,000.

On the application of A. Blumes Coco a rehearing was granted, and on the rehearing, because Jules A. Coco and Mrs. Eliza Woodruff had not formally opposed the appointment of A. Blumes Coco as administrator, temporary or permanent, and had not asked for the appointment for either or both this court held the matter was never at issue in the district court; and the court set aside its original decree and or-

dered the dismissal of relators' application, with full reservation of the rights of all parties concerned to have the issues with reference to the appointment of a permanent administrator determined in a proper proceeding in the district court. Succession of Coco, 184 La. 144, 165 So. 646.

Thereafter, the case was tried on the formal opposition filed by Jules A. Coco and Mrs. Eliza Coco Woodruff to the application of A. Blumes Coco to be appointed permanent administrator of the succession of Albert D. Coco. The trial resulted in a judgment dismissing the opposition and appointing A. Blumes Coco as permanent administrator of the succession. From that judgment the opponents, Jules A. Coco and Mrs. Eliza Coco Woodruff, are prosecuting the present appeal.

In the choice of the administrator the preference shall be given to the beneficiary heir over every other person, if he be of age and present in the state. Civ.Code, art. 1042.

If there be two or more beneficiary heirs of age and present in this state, the judge shall select one or two he shall consider the most solid for the administration. Civ. Code, art. 1043.

It is not disputed that Jules A. Coco is a beneficiary heir of Albert D. Coco and the paramount question presented for decision is whether A. Blumes Coco is also a beneficiary heir of the deceased and therefore entitled to compete with the admitted beneficiary heir for the appointment as administrator of the succession.

An heir is defined by our law as the person who is called to the inheritance of the deceased person, acquiring his rights and property and incurring his obligations. Civ.Code, art. 884; Succession of Justus, 44 La.Ann. 721, 11 So. 95. And a legal heir is an heir of the blood, Civ.Code, art. 879.

Succession is the transmission of the property, rights, and obligations of the deceased to the heir. Civ.Code, arts. 871, 872, and 873. And a succession is acquired by the legal heir by mere operation of law immediately after the death of the deceased person whom he succeeds. Civ.Code, arts. 940, 941.

The foregoing codal provisions leave no room for doubt as to the fact of the rights and property of a deceased person being transmitted directly and immediately to his legal heir or heirs. Tested by these provisions the claim of A. Blumes Coco that he is a beneficiary heir of Albert D. Coco is not well founded.

A. Blumes Coco was not called to the succession of Albert D. Coco at his death. Albert D. Coco died intestate and left neither ascendants nor descendants. Therefore under article 912 of the Civil Code, his two brothers, Lestan L. Coco and Jules A. Coco, and his two sisters, Mrs. Eliza Coco Woodruff and Mrs. Emma Coco Bordelon, inherited the whole succession to the exclusion of all other persons.

A. Blumes Coco was a son of Lestan L. Coco, who was living at the time of the death of his brother Albert D. Coco, and, as a consequence, inherited an undivided one-fourth of his succession. In other words, Lestan L. Coco became the owner of an undivided one-fourth interest in the

rights and property, subject to the charges, left by Albert D. Coco, inheritance being one of the modes by which the ownership of things or property is acquired. Civ. Code, art. 870.

On the death of Lestan L. Coco, his son A. Blumes Coco became one of his heirs, because as a legal heir he was called to the succession of his father. As such he inherited an interest in all the rights and property left by his father, including the undivided one-fourth interest owned by Lestan L. Coco in the succession of Albert D. Coco.

A. Blumes Coco inherited nothing in his own right from the succession of Albert D. Coco, either by disposition of the law or by representation of his father, since a person may not represent another who was alive at the time of the opening of the succession. He can take only that which his father had already acquired by inheritance from his predeceased brother. A. Blumes Coco is an heir of his father Lestan L. Coco, but not of his uncle Albert D. Coco.

Lestan L. Coco, who died eight days after Albert D. Coco had passed away, neither accepted nor rejected the succession of his predeceased brother. From this circumstance it is argued on behalf of A. Blumes Coco that all the rights of inheritance Lestan L. Coco had in the succession of Albert D. Coco were held in suspense and that the death of Lestan L. Coco prior to the acceptance or rejection by him of the succession of Albert D. Coco had the effect of placing A. Blumes Coco in the position of a direct heir, with the right reserved to him of accepting or rejecting the succession of his deceased uncle Albert D. Coco.

The argument is a fallacious one as it is based wholly on the assumption that A. Blumes Coco by reason of his father's death became a direct heir of his predeceased uncle, which by the express provisions of the Code he did not, as we have shown. We find nothing to the contrary in the codal articles 944, 945, and 946, relied on by A. Blumes Coco in support of his contention. In fact, those articles merely form a part of a series of rules embodied in the Code, beginning with article 940 and ending with article 949, creating and regulating the rights and obligations of heirs.

The provisions of articles 944, 945, and 946 of the Code are in sequence to those provisions of the law contained in the codal articles 940, 941, 942, and 943 providing that by the mere operation of the law the heir succeeds the deceased immediately at the moment of his death and is continued in the right of possession which the deceased had, even if he is ignorant of the death of the deceased, or before he has taken any step to put himself in possession or has expressed any will to accept the succession.

Article 946 provides: "Though the succession be acquired by the heir from the moment of the death of the deceased, his right is in suspense, until he decide whether he accepts or rejects it.

"If the heir accept, he is considered as having succeeded to the deceased from the moment of his death; if he rejects it, he is considered as never having received it."

Although the right of the heir may be held in suspense until he accepts or rejects the succession, he is, nevertheless the true owner, no matter who may hold possession of the property, until he has rejected the succession. If he accepts it, he is considered as having succeeded to the deceased from the moment of his death. See, also, article 987 of the Civil Code providing: "The effect of the acceptance goes back to the day of the opening of the succession."

The case of Succession of Lumsden, 17 La.Ann. 38, is cited by A. Blumes Coco in support of his contention that the seizin of the heir is suspended until he accepts or rejects the succession of the deceased. It is true, the court in that case held that under Civ.Code (1825), art. 940, following the doctrine of the Roman Law, an inheritance remains without an heir and in abeyance and is considered as holding the place of the master, as representing the deceased to whom it belongs, until the heir accepts or rejects it. But the court while correctly stating the doctrine of the Roman Law was incorrect in applying it to the codal article, which is governed by the doctrine of the French Law. This will appear from an examination of the opinion rendered by the Supreme Court in the case of O'Donald v. Lobdell, 2 La. 299, wherein the court analyzed article 940 and related codal articles. In that case, Mr. Justice Porter, speaking for the court, declared:

"By the Roman law, and that of Spain, the acceptance on the part of the heir was necessary to vest in him a right to interfere with the succession. Our old code [1808] recognized this principle, and declared: 'That until the acceptance, or renunciation, the inheritance is considered as a fictitious being, representing in every respect the deceased who was the owner of the estate.'—C.Code, 162, art. 74.

"The legislation in the Louisiana Code [1825], has made a material change in this part of our law. The jurisconsults charged with the preparation of this work, in their report to the general assembly expressly state, that they thought it wise to 'adopt the rule which vests the right of the heir from the moment of the death of the deceased.'—See report of proposed amendments, page 114.

"This was the doctrine of the ancient law of France, expressed by the well known phrase: La mort saisit le vif. It has been preserved in the Napoleon Code. —Toullier, Droit Civil Français, liv. 3, tit. 1, chap. 1, No. 79, vol. 4, p. 79, Code Nap. 724."

O'Donald v. Lobdell was decided in March, 1831, which was only a few years after the adoption of the Civil Code of 1825. The case is not referred to in the opinion rendered by the court in the Succession of Lumsden, which was decided in May, 1865.

Article 940 of the Code of 1825 was incorporated in the Code of 1870 as article 943.

The maxim, "Le mort saisit le vif," is a well-recognized and often-applied rule of our jurisprudence. Thus, in the case of Tulane University v. Board of Assessors, 115 La. 1025, 40 So. 445, it was held that

under the maxim, as embodied in articles 940, 941, 942 and 943 of the Civil Code, the property of a deceased person is transferred directly and immediately to the legal heir, or, in the absence of forced heirs, to the universal legatee, without any intermediate stage when it would be vested in the succession representative, or in the legal abstract called "succession."

The court in support of its holding also cited articles 944, 945, 946, 947, 1611, and 1671 of the Civil Code and a number of its own decisions. Furthermore, answering the contention that pending the administration, the ownership of the property of a succession is vested in the succession, and commenting upon the decisions cited in support of the contention, the court declared, 115 La. 1025, at page 1029, 40 So. 445, 447, that if the cited decisions "went counter to the doctrine expressed by the maxim, 'Le mort saisit le vif,' whereby the ownership of the property is transmitted directly and immediately from the testator to the heir, or to the universal legatee, as the case may be, they would be in the teeth of the Code, and would simply have to brushed aside." But the court found, as is stated in the opinion, that they were to the contrary effect, and, by way of illustration, it quoted from one of the cited decisions to show that fact.

Commenting further upon the cited decisions, the court, on the same page of the opinion, says: "These decisions do not mean to hold, and do not hold, that the abstract being called 'succession' is owner of the property in the sense of excluding, or affecting in the slightest degree, the ownership vested in the heir or in the universal legatee. When these decisions speak of the succession being owner, they mean, as a matter of course, that it is holding for the true owner, and merely for the purposes of administration. Nothing that is said in them is intended to detract in the slightest degree from the recognized ownership of the heir, or of the universal legatee, as the case may be, and from the substantial rights (such as that of exemption from taxation) flowing from such ownership."

The question at issue in Tulane University v. Board of Assessors was, whether the University as the universal legatee of the deceased was the owner of the property composing its legacy, and as such exempt from the payment of taxes based on certain assessments made while the succession was in the possession of the executors, the taxing authorities contending that at the time the assessments were made the entire estate was vested in the succession and none of it in the University. As we have stated, this court, in deciding the question, held that under the maxim, "le mort saisit le vif," the University, as the universal legatee, was vested with the ownership and seizin of the universal legacy from the moment of the death of the testator, and that, as a consequence, the property composing the universal legacy could not be assessed to the succession while it was in course of administration.

The heir who is granted the right to accept or reject the succession by article 946 of the Civil Code is clearly the heir of

the deceased and not the heir of the heir of the deceased. The right is personal and optional and remains inchoate until exercised, and, but for the provisions of article 944 of the Civil Code, would lapse, if not previously exercised, with the death of the deceased's heir.

Article 944 of the Civil Code provides: "The heir being considered as having succeeded to the deceased from the instant of his death, the first effect of this right is that the heir transmits the succession to his own heirs, with the right of accepting or renouncing, although he himself have not accepted it, and even in case he was ignorant that the succession was opened in his favor."

All that the provisions of the codal article mean is, that as the ownership of the property of the succession is vested in the heir directly and immediately upon the death of the deceased, subject to his right to accept or renounce it, in the event the heir himself should die before exercising the right, he transmits to his own heir, either as the whole or as only a part of his own succession the property acquired by him by inheritance, with the same privilege of accepting or renouncing which he enjoyed. The transmission of the succession with its attendant rights may be effected by the heir himself in a testament executed in the form prescribed by law, or by omitting to execute a testament he may permit the transmission to be made for him by the operation of law. Civ.Code, arts. 870, 871, 875, 876, 884, 940, 941.

In other words, the right of the heir of the heir to accept or reject the succession

falling to the latter is one which, under the codal article, is transmitted to him as a part of the succession of the heir of the person who died first and not by inheritance of the succession of that person, which had already been transmitted to his own heir. The fact that the heir of the person first deceased has not accepted or received his inheritance before his own death does not make his heir the heir of the person from whom he has inherited.

We do not find anything in article 945 of the Civil Code, also relied on by A. Blumes Coco, that is inconsistent with the views we have expressed. On the contrary, we think that the provisions of the codal article are wholly consistent with and support our views. Article 945 reads as follows, viz.:

"The second effect of this right [the right of the heir of being considered as having succeeded to the deceased from the instant of his death] is to authorize the heir to institute all the actions, even possessory ones, which the deceased had a right to institute, and to prosecute those already commenced. For the heir, in everything, represents the deceased, and is of full right in his place as well for his rights as his obligations."

Even when there is no executor or administrator, the succession is never in abeyance and without a representative during the time the heir is deliberating whether he will irrevocably take title, because under the express terms of the codal article the heir himself represents the succession and is seized of it from the moment it is opened by the death of the de cujus.

After the case was argued and submitted the appellee A. Blumes Coco filed a motion to dismiss the appeal on the ground that he has filed in the district court and caused to be advertised a provisional account as administrator ad interim of the succession of Albert D. Coco, and that thereafter he and certain of his brothers and sisters, heirs of Lestan L. Coco, and Mrs. Emma Coco Bordelon, filed a rule in the district court setting forth that an administration is no longer necessary, accepting the succession of Albert D. Coco unconditionally and praying to be placed in possession of their respective interests therein, and ordering the other heirs of Albert D. Coco, namely, Jules A. Coco and Mrs. Eliza Coco Woodruff, brother and sister of the deceased, and Lestan L. Coco, Jr., a brother of movers, to show cause why they should not be sent into possession of their virile shares in the succession.

Appellee further alleges that as the provisional account has not been homologated and the rule filed by a portion of the heirs to be placed in possession has not been tried contradictorily with the sheriff and tax collector and the other heirs the appeal should be dismissed until the account is approved or rejected and the rule finally tried and disposed of by the judge of the district court.

In the alternative, the appellee prays that the decision on this appeal be deferred and the case be remanded to the district court until that court has passed on his provisional account and on the rule taken by his aunt, his brothers and sisters and himself to be placed in possession.

■ The appellants Jules A. Coco and Mrs. Eliza Coco Woodruff have filed an opposition to appellee's motion, alleging numerous grounds of objection, among which is the objection that as the motion to dismiss the appeal was filed after the case was argued and submitted it comes too late. The objection is sound and must be sustained.

■ Nor do the grounds set up by appellee afford us any justification for deferring our decision on this appeal and remanding the case to await the action of the district court on the provisional account of the administrator ad interim and on the rule of certain heirs to be placed in possession.

For the reasons assigned, the motion to dismiss or remand is denied, and it is ordered that the judgment appealed from be annulled and the appointment of A. Blumes Coco as administrator of the succession of Albert D. Coco be set aside. It is further ordered that the appellant Jules A. Coco be appointed administrator of the succession of Albert D. Coco and that he be permitted to qualify as such upon taking the oath and furnishing the bond required by law. The succession of Albert D. Coco is to pay the costs of this proceeding.