176 So.2d 703 (1965)
James E. FORTSON, III, Administrator,
v.
LAKE, INC.
No. 1694.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1965.
Rehearing Denied July 15, 1965.
*704 Charles E. McHale, Jr., New Orleans, for plaintiff-appellant.
Charles E. Richards, New Orleans, for defendants-appellees.
Before SAMUEL and CHASEZ, JJ., and CHRIS T. BARNETTE, J. pro tem.
SAMUEL, Judge.
This suit involves five vacant lots of ground in the Parish of Jefferson purchased by a clergyman on April 25, 1928. Approximately during the year 1938 the clergyman left the State of Louisiana and moved to another part of the United States where he has lived under an assumed name. He has never returned to Louisiana and has attempted to conceal his identity and former occupation.
For some reason undisclosed by the record, the property was not assessed on the parish tax rolls until 1960. During that year one of the defendants herein, Frank B. Wood, president of the other defendant, Lake, Inc., caused the lots to be supplemented on the 1959 tax rolls in the name of "Francis Stern", a fictitious person. On August 3, 1960 the five lots assessed in the name of "Francis Stern" were advertised and sold to defendant Lake, Inc. for the unpaid 1959 state taxes.
On December 22, 1960, acting under the alleged authority of LSA-R.S. 9:1585, the Public Administrator for the Parish of Jefferson applied to the district court of that parish for appointment as administrator of the absentee's property, consisting solely *705 of the five lots in question, on the ground that for a period of more than 8 years the absentee had been absent from Louisiana, was unrepresented in this state and his whereabouts were unknown. In due course an attorney was appointed to represent the absentee, or his heirs, an inventory of the property was taken, and the application was advertised. Letters of administration were granted to the Public Administrator on February 1, 1961. The following day the administrator requested of Lake, Inc., the tax purchaser, that it redeem the lots upon the administrator paying the legal redemption costs. The request was refused. The former Public Administrator, James E. Fortson, III, was succeeded as plaintiff herein by the present Public Administrator, Joe D. Lindsay, by an order of substitution on October 26, 1962.
After the Public Administrator had requested redemption of the 1959 tax sale, the defendant Wood attempted to locate the absentee clergyman. He located the man through the intervention of another clergyman and obtained from the absentee a transfer of the five lots to Lake, Inc. by a sale without warranty, dated February 21, 1961, in which the vendor took cognizance of the fact that the purchaser had acquired a tax title to the property and relinquished his right to redeem. The sale was made for a cash consideration of $1,500. On April 4, 1961, Lake, Inc. transferred the property to Wood.
On June 14, 1961 plaintiff filed this suit praying that the February 21, 1961 sale without warranty be decreed a nullity and that the defendants be ordered to redeem the 1959 tax sale upon payment of the cost of redemption. The petition alleges, among other things, that the absentee was deceased and that his signature on the sale was a forgery. After trial there was judgment in favor of the defendants, Lake, Inc. and Frank B. Wood, and against the plaintiff, dismissing plaintiff's suit at his cost. Plaintiff has appealed.
In this court plaintiff concedes the absentee is alive, or at least was alive on February 21, 1961, the date on which the sale without warranty to Lake, Inc. was executed, and that the absentee did execute that sale. He now contends the letters of administration were properly issued to him on February 1, 1961 and that the absentee legally could not transfer title to Lake, Inc. on February 21, 1961, while the property was under administration, without first removing the administrator. Defendants argue that immovable property does not come within the purview of LSA-R.S. 9:1585, the authority for plaintiff's appointment as administrator, and therefore the trial court had no jurisdiction of the purported administration and its issuance of letters of administration was a nullity.
The statutes presented for our consideration are LSA-R.S. 9:1585 and LSA-C.C.P. Art. 3211. Respectively, they read as follows:
"Except as otherwise provided in R.S. 9:151 et seq., as amended, they shall be appointed administrators of all money or other property in their respective parishes which has been abandoned or the ownership of which is unknown and of all the money or other property standing in the name of persons who are absent and not represented and have not been heard from for eight years or more. It shall be the duty of any person, firm or corporation holding such funds or property to deliver same to the public administrator and his receipt for same shall relieve said person, firm or corporation from all liabilities therefor. The public administrators shall administer such property in the manner provided by law for the administration of vacant succession." LSA-R.S. 9:1585.
"A succession representative shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor." LSA-C.C.P. Art. 3211.
*706 We find it unnecessary to consider the question of whether or not immovable property comes within the purview of LSA-R.S. 9:1585. Assuming, but not deciding, that it does, we are of the opinion that the administrator is not entitled to the relief he now seeks and the judgment he appeals from must be affirmed.
The administrator's case is predicated upon the contention that the absentee legally could not transfer title while the property was under administration. He argues that until the administrator is removed as such, legal title, including seizen, is vested in him only and that, subject to the approval of the court, the only party who can transfer title during the administration is the administrator and the only right acquired by the defendants by virtue of the sale without warranty was the right to bring the administration to an end or to obtain the surplus remaining in the account of the administrator after the latter sells the property. We are referred to the last sentence of LSA-R.S. 9:1585, which provides that the public administrator shall administer property in the manner provided by law for the administration of vacant successions, to LSA-C.C.P. Art. 3211, which provides that the succession representative shall be deemed to have possession of all succession property, and to various cases, such as Succession of Serres, 135 La. 1005, 66 So. 342, Succession of Stauffer, 119 La. 66, 43 So. 928, and Simpson v. Colvin, La.App., 138 So. 2d 438.
The maxim "le mort saisit le vif", the principle upon which plaintiff's contention is based, has been recognized in Louisiana law for almost 150 years. Under that maxim the heir or, in the absence of a forced heir, the universal legatee acquires seizen and ownership of right from the moment of the decedent's death. But where there is an administration of the estate of a decedent, the administrator or executor, subject to the supervision and control of the court, has actual possession of the estate's property during the administration, the administrator or executor acquires seizen in fact while the heir or, in the absence of a forced heir, the universal legatee acquires seizen of right. With the exception, here immaterial, that the maxim does not apply to irregular heirs (Glenn v. West, 151 La. 522, 92 So. 43, Succession of Barber, 52 La.Ann. 960, 27 So. 363, Wimberly v. King, La.App., 179 So. 515), we believe this is the law expressed by the cited jurisprudence, Article 3211 of the Code of Civil Procedure and Civil Code Articles 940-948, 1609 and 1610.
It is equally clear that in successions, under the maxim "le mort saisit le vif", the legal heir or, in the absence of a forced heir, the universal legatee is vested with the ownership of the succession property immediately upon the death of the decedent regardless of whether or not there is an administration of the estate. Johnston v. Burton, 202 La. 152, 11 So.2d 513; Succession of Coco, 185 La. 901, 171 So. 70; Tulane University of Louisiana v. Board of Assessors, 115 La. 1025, 40 So. 445.
And under our jurisprudence an heir or universal legatee may sell his entire interest in a succession subject to the charges with which that interest is burdened. Mayo v. Stroud, 12 Rob. 105; Griffin's Succession v. Davidson, La.App., 125 So.2d 30; Van Der Karr v. Stead, La.App., 21 So.2d 111; Lacaze v. Hardee, La.App., 7 So.2d 719.
Since an heir or universal legatee may sell his entire interest in a succession, subject to the charges with which that interest is burdened, it follows that in the instant case, where in the five lots transferred by the sale to Lake, Inc. constitute all of the property involved in the administration, the absentee legally can accomplish the same thing. The fact that the sale may be subject to some charges does not affect its legality or render the sale null. And there is no question or issue relative to charges bearing against the property before us in this case. There is no claim therefor; the *707 administrator here seeks only: (1) to have the sale decreed a nullity, and (2) an order requiring the defendants to redeem the 1959 tax sale upon the payment of redemption costs. As the sale is a legal transfer of the absentee's interest in, and the complete ownership of, the five lots involved, the defendants, of course, cannot be ordered to redeem.
The judgment appealed from is affirmed.
Affirmed.