Judgment rendered October 29, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,379-CA
No. 56,380-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 56,379-CA

WINDWARD LAND, LLC AND                     Plaintiffs-Appellants
MICHAEL MORRIS GULLEY

versus

MARY LEE MANN, ET AL                       Defendants-Appellees

* * * * *
*Consolidated with*
* * * * *

No. 56,380-CA

WILLIAM LAMONT FRAZIER, ALVIN              Plaintiffs-Appellees
EDWARDS AND KIANA EDWARDS AND
VANESSA EDWARDS

versus

WINDWARD LAND, LLC AND                     Defendants-Appellants
MICHAEL MORRIS GULLEY

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 83877& 85042

Honorable Nicholas E. Gasper, Judge

* * * * *

BETHARD & BETHARD, LLP                     Counsel for Appellants,
By: Benjamin T. Bethard                    Windward Land, LLC
                                           and Michael Morris Gulley

AARON R. WILSON

Counsel for Appellees, Jerry Walker, Jr., Jerrell Edwards, Terry Lee Turner, Delane Tyrese Raney, Shaela Edwards, Claudell Turner, Jr., Mary Lee Mann (Unknown Heirs), Jeremiah Edwards (Unknown Heirs), Arthur Edwards (Unknown Heirs), Inez Howard (Unknown Heirs), Zephyr Walker Johnson (Unknown Heirs)

CARL ANDREW PERKINS

Counsel for Appellees, William Lamont Frazier, Alvin Edwards, Kiana Edwards, Vanessa Edwards

HENRY GOODRICH, JR.

Counsel for Appellee, Alicia R. Edwards

THOMAS & THOMAS, LLC
By: Loyd Kenneth Thomas

Counsel for Appellee, Ronnie Edwards

DONALD R. PARDUE

In Proper Person, Appellee

LATASHA MARTIN

In Proper Person, Appellee

PAULA ZEPHYR CLEMONS

In Proper Person, Appellee

\* \* \* \* \*

Before PITMAN, STONE, and THOMPSON, JJ.

PITMAN, C.J., concurs in the result.

THOMPSON, J., concurs in the result.

**STONE, J.**

This consolidated civil appeal arises from the 42nd Judicial District Court, the Honorable Nicholas E. Gasper presiding.[1] This litigation began as an action to partition immovable property, and the facts and procedural history are rather complex. The appellants, Windward Land, LLC ("Windward"), and Michael M. Gulley ("Gulley"), are the plaintiffs in the partition action which initiated this suit, but they appeal in their capacity as the defendants-in-reconvention/intervention (hereinafter, collectively the "appellants"). They claim undivided interests in three separate tracts of land in DeSoto Parish. While all three tracts are concerned in the overall dispute, only one of them, designated as "Tract 2," concerns this appeal.

The defendants in the partition suit oppose this appeal in their capacity as plaintiffs-in-reconvention/intervention (hereinafter, collectively the "appellees"). There are two sets of appellees, each with different counsel: (1) Ronnie Edwards; and (2) William Frazier, Alvin Edwards, and Kiana Edwards (hereinafter, the latter are referred to as the "Frazier-Edwards appellees.") They claim co-ownership of Tract 2 amongst themselves and each filed reconventional demands seeking to disprove

---

[1] Judge Gasper is Division B of the trial court. Judge McCartney is Division A. There is a total of four separate trial court suits related to this appeal. The following two were consolidated at the trial court level and in this appeal: (1) docket no. 83,877-B: appellants' suit for partition by licitation/public sale (the "partition action"); and (2) docket no. 85,042-A: a petitory action by the Frazier-Edwards appellees, defined *infra*, who are also defendants in the abovementioned partition suit. There are also a pair of related suits that were dismissed with prejudice and not appealed: (3) docket no. 56,028-A: Succession of Augustine Howard, wherein appellee Ronnie Edwards filed a petition to annul succession for fraud or ill practices; and (4) docket no. 84,381-A: Ronnie Edwards's action to annul sheriff's sale against appellant Gulley ("sheriff's sale annulment action").

appellants' ownership claims and to be declared owners of Tract 2.[2]

The trial court granted the Frasier-Edwards appellees' reconventional demand. In particular, the trial court held that the appellants' titles derive from an "invalid" judgment of possession ("JOP"), which was rendered in 1996 and recognizes Earnestine Walker as the sole heir of Augustine Howard; according to the appellees, this holding necessarily implies that the 1996 JOP is an absolute nullity, attacks on which are imprescriptible. It is this aspect of the trial court's judgment that is the subject of this appeal.

For the reasons stated herein, we clarify and affirm the trial court's judgment; more particularly, we: (1) affirm the trial court's holding that Zephyr Johnson inherited from Augustine Howard to the exclusion of Earnestine Walker; (2) hold that, regardless, the 1996 JOP is not an absolute nullity; (3) hold that La. R.S. 9:5630 and La. C.C. art. 3502 are inapplicable to the appellees' actions; (4) deny the appellants' exception of res judicata; (5) reject the appellants' assignment of error regarding the public records doctrine; and (6) declare that the appellees have "better title" than the appellants in accordance with La. C.C.P. art. 3654(2).

## FACTS AND PROCEDURAL HISTORY

In 1924, the owners of Tract 2 signed a partition agreement which resulted in Augustine Howard and Inez Howard each owning a 50 percent undivided interest in Tract 2. Inez Howard died intestate in 1941. Her succession resulted in a JOP declaring her daughter, Zephyr Johnson, the

---

[2] Ronnie Edwards filed a reconventional demand seeking annulment of the 1996 JOP for fraud or ill practices, which was dismissed with prejudice. The Frazier-Edwards appellees filed a motion for declaratory judgment –which is in substance a reconventional demand, and, therefore, is sometimes referred to as such in this opinion. The trial court granted this reconventional demand.

heir to Inez Howard's interest in Tract 2. (Zephyr Johnson was also the legitimate niece of Augustine Howard.)

In 1955, Zephyr Johnson purportedly sold 10 percent ownership of Tract 2 to Addie Edwards, despite only having 50 percent interest therein. The sale deed was recorded in the DeSoto Parish conveyance records on October 29, 1955.[3]

Augustine Howard died intestate in 1956. His succession remained unopened until 1996, when it was opened and closed by a JOP (the "1996 JOP") recognizing Earnestine Walker as the sole heir of his estate, including his interest in Tract 2. The validity of this JOP is at the center of the dispute.[4] The 1996 JOP was rendered and signed on February 26, 1996, and recorded on February 28, 1996.

Earnestine Walker died on November 14, 2014. Her succession was probated, resulting in a judgment of possession recorded on January 4, 2016, recognizing 14 heirs in differing percentages. Six of their interests were conveyed to the appellants. On October 19, 2022, Gulley bought Alyce McQueen's interest at a sheriff's sale. Windward purchased the interests of the other five.

On March 7, 2023, the appellants joined together and filed an action for partition of Tract 2 by licitation against the numerous co-owners thereof, including Ronnie Edwards, Alvin Edwards, Jr., Kiana Edwards, and William

---

[3] Thus, Addie Edwards's interest was recorded at the time appellants' attorney had an abstractor check title to Tract 2.

[4] The appellants argue that it is valid, as their titles derive from it; the appellees argue that it is invalid. The appellees argue: (1) the 1996 JOP is an "absolute nullity"; (2) Zephyr Johnson is and was the true heir to Augustine Howard's interest in Tract 2; which (3) automatically passed to Addie Edwards through the after-acquired title doctrine at the moment of Augustine Howard's death.

Frazier. This partition action provoked two reconventional demands and three other actions.

In response, appellee Ronnie Edwards filed three unsuccessful actions to, in effect, annul the 1996 JOP.[5] However, on May 30, 2024 (the hearing date), Ronnie Edwards filed a petition to intervene whereby he alleged, *inter alia*, that he, as intestate heir of Jeremiah Edwards (son of Addie Edwards), owns an undivided interest through acquisitive prescription in favor of Addie Edwards's estate.[6]

On October 17, 2023, the appellants (in their capacity as plaintiffs) filed a motion for summary judgment ("MSJ") in the partition suit.

On April 15, 2024, the Frazier-Edwards appellees reconvened and filed a motion for declaratory judgment in the partition suit; in pertinent part, they requested the court to declare:

> Whether or not the Sale from Zephyr Johnson to Addie
> Ewards in 1955 and recorded in the Mortgage records of
> DeSoto Parish entry. No. 246695 conveys the entire
> interest owned of 38 acres in Tract II
> ...
>
> Movers pray that this Honorable Court rule that the entire
> property of 38 acres was sold in 1955 by Zephyr Johnson
> who was the only legitimate heir at the time

---

[5] On September 7, 2023, he: (1) reconvened in the partition suit, alleging that the appellants acquired their interests in Tract 2 by unspecified "fraud or ill practices"; and (2) filed a petition to annul the sheriff's sale wherein Gulley purchased his interest in Tract 2. (3) On October 26, 2023, Ronnie Edwards filed a petition to annul succession in the Succession of Augustine Howard. Pursuant to the appellants' exceptions of prescription, no cause of action, and no right of action, Judge McCartney dismissed the latter two with prejudice in February 2024. On March 13, 2024, Judge Gasper, in the partition suit, granted the appellants' exception of no cause of action against Ronnie Edwards's reconventional demand to annul the 1996 JOP for completely unspecified "fraud or ill practices." In the partition suit, on May 1, 2024, Judge Gasper granted the appellants' motion in limine barring all evidence of fraud or ill practices.

[6] The petition also alleges that Ronnie's affidavit of death and heirship is attached, but there is no attachment.

4

Additionally, on the same date, these appellees filed a petition for petitory action in a separate suit (i.e., trial court docket no. 85,042-A).

On May 1, 2024, Judge Gasper ordered consolidation of the Frazier-Edwards appellees' petitory action (docket no. 85,042-A) with the partition suit (docket no. 83,877-B).

On May 30, 2024, Judge Gasper heard the appellees' reconventional demand for declaratory judgment and the appellants' MSJ and exception of lis pendens. After taking the matter under advisement, on June 13, 2024, Judge Gasper ruled: (1) granting declaratory judgment to appellees-- pursuant to former La. C.C. art. 919-- the 1996 JOP was "invalid" because Earnestine Walker, an illegitimate child of Augustine Howard, could not inherit from him; rather, Zephyr Johnson, his legitimate niece, was the rightful heir; (2) pursuant to the after-acquired title doctrine, purchaser Addie Edwards acquired 100 percent ownership of Tract 2 upon Augustine Howard's death because Zephyr Johnson was Augustine Howard's legitimate niece and sole heir as to his 50 percent interest in Tract 2; (3) granting the appellants' exception of lis pendens, dismissing the petitory action; and (4) denying the appellants' MSJ.

The appellants filed a motion for new trial arguing, *inter alia*, that La. R.S. 9:5630 barred the appellees' declaratory judgment action. After a hearing held on August 12, 2024, the trial court orally rejected this motion. However, Judge McCartney previously granted appellants' exception of prescription in 56,028-A, wherein Ronnie Edwards petitioned to annul the Succession of Augustine Howard, and in 84,381-A, wherein Ronnie Edwards petitioned to annul the sheriff's sale whereby appellant Gulley obtained a fraction of his title to Tract 2. However, those records are not

5

part of the record on appeal; only those judgments are in our record; both were rendered on February 23, 2024.

## ARGUMENTS

The appellants' titles are derived from the 1996 JOP. Thus, by necessary implication, the trial court judgment invalidates the appellants' titles. The appellants argue that the appellees' reconventional demand attacking the 1996 JOP is barred by prescription, res judicata, and the public records doctrine. To that end, the appellants enumerate four assignments of error: (1) Judge Gasper erred in declaring the 1996 JOP "invalid" because liberative prescription bars it from being attacked, citing La. C.C. art. 3502 and La. R.S. 9:5630; and (2) Judge Gasper erred in ruling on the validity of the 1996 JOP because of the res judicata effect of the judgments Judge McCartney had already rendered;[7] and (3) whatever interests the appellees may have are, pursuant to the public records doctrine, unenforceable against the appellants; and (4) Judge Gasper erred in not granting the appellants' MSJ.

The appellees' central argument is that the 1996 JOP is an *absolute nullity* because it contravenes former La. C.C. art. 919, which was in effect at the time that Augustine Howard died in 1956. This, if true, would preclude the appellants' prescription argument pursuant to La. R.S. 9:5630. (The appellants also deny applicability of res judicata and the public records doctrine.)

---

[7] The appellants contend that the final judgments against appellee Ronnie Edwards in Succession of Augustine Howard and in Ronnie Edwards's action to annul sheriff's sale preclude the Frazier-Edwards appellees' declaratory judgment action.

6

**DISCUSSION**

**Standard of review**

The trial court gave written reasons for judgment, which included findings of fact. No party has asserted that the trial court made a factual error in deciding this case. Accordingly, we adopt the trial court's findings of fact pursuant to the presumption of correctness. *Bowie v. Bowie*, 228 So. 2d 83 (La. App. 2 Cir. 1969). Our review is limited to questions of law. The standard of review for questions of law is *de novo*. *La. Mun. Ass'n v. State,* 04-227 (La. 1/19/05), 893 So. 2d 809.

**General precepts: real actions; declaratory judgment**

"A civil action is a [judicial] demand for the enforcement of a legal right." La. C.C.P. art. 421. There are generally three types of civil actions: personal actions, real actions, and mixed actions:

> A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess.
> A real action is one brought to enforce rights in, to, or upon immovable property.
> A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof.

La. C.C.P. art. 422.

A "real action" is one that protects real rights in immovables, e.g., ownership, the right to possess, servitudes, mortgages, etc.[8]

> Actions for the recovery of an undivided interest in lands, actions to compel conveyance of immovables, to decree that certain property belongs to a succession, to recover a debtor's immovables in the hands of third persons, and to compel the surrender of immovable property sold under a bond for deed agreement have been held to be petitory actions. Claims to a portion of an estate, in contrast to

---

[8] Ronald J. Scalise, Jr., 2 La. Civ. L. Treatise, Property § 11:1 (5th ed.)

7

claims for the payment of legacies, have been held to be subject to a 30-year liberative prescription. An action to set aside a dation en paiement and a sale as not supported by consideration has been held to be "clearly … not a personal action, as it is brought on behalf of an entire estate to have set aside conveyances of property and the property returned to the mass of the succession."[9]

An action for declaratory judgment recognizing ownership of an immovable is a real action.[10] "The plaintiff in such an action for declaratory judgment of the ownership of immovable property has the same burden of proof as a plaintiff in a petitory action against a defendant who is out of possession: he recovers on proof of a better title."[11] In relevant part, La. C.C.P. art. 3654 provides that when the issue of ownership of immovable property is presented in an action for a declaratory judgment the court shall render judgment as follows:

> (1) If the party who would be entitled to the possession of the immovable property…in a possessory action has been in possession for one year after having commenced possession in good faith and with just title or has been in possession for ten years, the court shall render judgment in favor of that party, unless the adverse party proves that he would be entitled to a judgment recognizing his ownership in a petitory action under Article 3653(A)(1).
> (2) *In all other cases, the court shall render judgment in favor of the party who proves better title to the immovable property*. (Emphasis added.)

Regarding the effects of a JOP, La. C.C.P. art. 3062 provides:

> The judgment of possession rendered in a succession proceeding shall be prima facie evidence of the relationship to the deceased of the parties recognized therein, as heir [or] legatee…and of their right to the possession of the estate of the deceased.

---

[9] *Id*. at § 10:14. (Internal citations omitted).

[10] *Id*.

[11] *Id*. at § 11:43.

In *Marsh Cattle Farms v. Vining*, 30,156 (La. App. 2 Cir. 1/23/98), 707 So. 2d 111, *writ denied*, 98-0478 (La. 4/24/98), 717 So. 2d 1167, this court stated:

> A judgment of possession is prima facie evidence of the right of heirs in whose favor it was rendered to take possession of the decedent's estate*; however, it is not a basis for a plea of res judicata or conclusive evidence against persons having an adverse interest in or claim against the estate*. Therefore, judgments of possession merely recognize the rights of the heirs to the estate of the decedent. (Emphasis added; internal citation omitted.)

Thus, *Marsh* correctly recognizes that a JOP is not the final word on who owns property claimed on behalf of a decedent's estate.

**Inheritance law concerning "illegitimate" children in 1956**

Under former La. C.C. art. 919, which was in effect from 1908 to 1981, an "illegitimate" heir could not inherit in intestacy if there were any "legitimate" heirs of the deceased.

However, in *Trimble v. Gordon*, 430 U.S. 762, 97 S. Ct. 1459 (1977), the United States Supreme Court held that state inheritance laws that discriminate against children born out of wedlock, then called "illegitimate," violate the Equal Protection clause of the 14th Amendment to the United States Constitution.

In *Succession of Brown*, 388 So. 2d 1151 (La. 1980), the deceased's acknowledged illegitimate children brought an action to annul a JOP declaring the deceased's only legitimate child to be the sole heir. (This is the reverse of the party roles in this case, wherein Earnestine Walker, an illegitimate, was awarded the JOP.) Pursuant to the Equal Protection clauses of the federal and Louisiana constitutions, the Louisiana Supreme Court ruled that (former) La. C.C. art. 919 was unconstitutional; the article

9

precluded even acknowledged illegitimate children of a deceased from inheriting in his succession if there were any "legitimate" surviving family members.

*Succession of Brown*, which was decided in 1980, was silent as to whether its holding would be retroactive. In 1981, concerned by the potential retroactivity of *Succession of Brown*, the legislature enacted La. R.S. 9:5630 with the goal of limiting--by prescription--the enforcement of the inheritance rights of heirs and/or legatees not recognized in a JOP.

In *Succession of Clivens*, 426 So. 2d 585 (La. 1982), an allegedly acknowledged illegitimate child of the alleged father intervened in the succession of the alleged father's widow. The alleged father died intestate in 1971. On December 17, 1974, his widow obtained a JOP that recognized her as his sole heir. On October 19, 1978, the widow died. On July 20, 1979, the acknowledged illegitimate daughter intervened in her alleged father's widow's succession claiming that, as such, she was entitled to half of the father's estate. On rehearing, the Louisiana Supreme Court determined that *Succession of Brown*, *supra*, applies retroactively only back to January 1, 1975, the effective date of the Louisiana Constitution of 1974. *Succession of Clivens* at 600.

Because the alleged father died before January 1, 1975, *Clivens* did not reach the alleged daughter's claim of inheritance. The court thus found that her petition in intervention failed to state a cause of action. This reflects the general rule that the substantive law in effect on the decedent's date of death controls the succession.[12]

---

[12] *Succession of Landry*, 460 So. 2d 29 (La. App. 1 Cir. 1984), *writ denied*, 462 So. 2d 1249 (La. 1985).

10

In this case, Augustine Howard died in 1956. Therefore, former La. C.C. art. 919 applies in full force and effect to his succession. Because Earnestine Walker was his illegitimate daughter and Zephyr Johnson was his legitimate niece, the 1996 JOP in favor of Earnestine Walker is erroneous; Zephyr Johnson was the sole legal heir. Judge Gasper's judgment herein appealed is correct.[13]

**Public records doctrine**

The appellants argue that whatever rights the appellees may have in Tract 2 are ineffective because: (1) such are not recorded in the DeSoto Parish conveyance records; and (2) nobody recorded an "objection" to the 1996 JOP in the same. However, it is undisputed that Addie Edwards's cash sale deed was properly recorded in 1955; thus, it is only the appellees' *inheritance* rights flowing from Addie Edwards's succession that are unrecorded.

La. C.C. art. 3338 establishes the general rule of Louisiana's public records doctrine:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
> (2) The lease of an immovable.
> (3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.
> (4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

---

[13] However, it does not necessarily follow from Judge Gasper's correct conclusion on this point that the 1996 JOP in favor of Earnestine Walker is an absolute nullity.

Ownership by inheritance, whether testate or intestate, vests by operation of law at the moment of the decedent's death. *Tulane Univ. of Louisiana v. Bd. of Assessors*, 115 La. 1025, 1030, 40 So. 445 (1905); *Succession of Coco*, 185 La. 901, 911, 171 So. 70, 74 (1936); *Simpson v. Colvin*, 138 So. 2d 438, (La. App. 3 Cir. 1962) (*citing Tulane*, *supra*, with approval);[14]  *Baten v. Taylor,* 386 So. 2d 333 (La. 1979); *Biggs v. Hatter*, 46,910 (La. App. 2 Cir. 4/11/12), 91 So. 3d 1148, *writ denied*, 12-1075 (La. 9/21/12), 98 So. 3d 337. Therefore, inheritance rights are not subject to the public records doctrine. *Biggs*, *supra*.  This conclusion is required not only because of jurisprudence, but, also, by interpretation of La. C.C. art. 3338 itself: rights that vest by operation of law do not come within any of the four categories to which the article applies.

The appellants' argument that the appellees' inheritance rights are ineffective because nobody recorded an "objection" to the 1996 JOP is wholly without legislative or jurisprudential authority and, as the article is astutely interpreted by *Biggs*, *supra*, contradicts La. C.C. art. 3338.

This assignment of error is without merit and is rejected.

**Nullity of judgment**

As previously mentioned, the trial court held that the 1996 JOP is "invalid" and offered no other explanation as to how that obviated the need to determine whether the appellees' action was prescribed under La. C.C. art. 3502 or La. R.S. 9:5630.  The appellees argue that Judge Gasper, by implication, correctly concluded that the 1996 JOP is an absolute nullity,

---

[14] *Simpson* was overruled on other grounds by *In re Succession of Deal*, 13-200 (La. App. 3 Cir. 11/13/13), 129 So. 3d 686.

12

attacks on which are imprescriptible. This interpretation of Judge Gasper's reasoning seems true. Regardless, we conduct the following two-step analysis: (1) does the error in the 1996 JOP make it an absolute nullity and, thus, provide the appellees with an imprescriptible cause of action? and (2) if not, does liberative prescription bar the appellees' actions to be recognized as owners of Tract 2 despite the 1996 JOP? As explained below, La. C.C.P. arts. 2001 through 2006 constrain this court to rule in favor of the appellants on the former question. As to the latter, the appellees' claims simply do not come within the class of claims to which La. C.C. art. 3502 and/or La. R.S. 9:5630 apply.

Before we begin examination of the governing legislation, it will be helpful to place an action that would nullify or reverse a final judgment in its proper jurisdictional context.

### *Jurisdiction to correct errors in or underlying a final judgment.*

"Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." La. C.C.P. art. 1. "Only three avenues are available to alter the substance of a final judgment: (1) timely application for new trial; (2) timely appeal; and (3) nullity of the judgment." *Webster v. Boh Bros. Const. Co., Inc.,* 603 So. 2d 761 (La. App. 4 Cir. 1992); *Bernard v. Fireside Com. Life Ins. Co.*, 633 So. 2d 177 (La. App. 1 Cir. 1993), *writ denied sub nom. Bernard v. Fireside Com. Life Ins. Co.,* 634 So. 2d 839 (La. 1994). The law divides jurisdiction to correct errors between trial courts and appellate courts. Aside from new trial and the closely circumscribed action for nullity, *trial courts* do not have jurisdiction to correct errors in a final judgment. Beyond nullity and new

13

trial, the power to correct an error in a district court's final judgment is exclusively the *appellate* jurisdiction of the supreme court and the appellate courts. La. C.C.P. art. 2082; La. Const. art. V, §§ 5, 6, & 16.[15]

With these precepts in mind, we turn to the legislation governing a trial court's exercise of its jurisdiction to annul a final judgment.

***Nullity of judgment.*** Actions to annul final judgments are governed by La. C.C.P. arts. 2001 through 2006. "The nullity of a final judgment may be demanded for vices of *either* form *or* substance, *as provided in Articles 2002 through 2006*."[16] La. C.C.P. art. 2001. (Emphasis added.) The italicized language in the foregoing quote of La. C.C.P. art. 2001 indicates that the grounds listed in these articles are exclusive. Judgments suffering from vices of form are absolute nullities, while those which contain vices of substance are relative nullities. *Rivet v. Regions Bank,* 02-1813 (La. 2/25/03), 838 So. 2d 1290; *Brown v. Stratis Constr., LLC*, 21-0964 (La. App. 1 Cir. 3/7/22), 341 So. 3d 640.

*Vices of substance.* An action to annul judgment for the vices of substance –i.e., that the judgment was "obtained by fraud [and] or ill practices"—must be brought within one year of the plaintiff's discovery of the grounds. La. C.C.P. art. 2004. (We note that the trial court dismissed

---

[15] Conversely, original jurisdiction regarding nullity actions (as established by La. C.C.P. arts. 2001 through 2006) is vested only in the district court that rendered the subject judgment. La. C.C.P. art. 2006 and official revision comments thereto. This is known as jurisdictional venue. *Boyer v. Boyer*, 96-0346 (La. App. 1 Cir. 1/23/97), 691 So. 2d 1234, *writ denied*, 97-1415 (La. 9/26/97), 701 So. 2d 984.

[16] "A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled…A *final* judgment is a judgment which determines the merits in whole or in part." La. C.C.P. art. 1841. (Emphasis added.) A judgment of possession is a final judgment for purposes of the La. C.C.P. arts. 2001 through 2006. *See, Biggs v. Hatter, supra*.

with prejudice all of Ronnie Edwards's petitions to annul the 1996 JOP for vices of substance.)

*Vices of form.* A judgment may also be annulled for one or more of the vices of form, namely: (1) a judgment against an incompetent person not represented as required by law; (2) a judgment rendered against a defendant who was not served as required by law, provided that defendant has not waived objection to jurisdiction; (3) an invalid default judgment against a defendant; or (4) a judgment rendered by a court lacking subject matter jurisdiction. La. C.C.P. art. 2002. The existence of one or more of the vices of form renders the subject judgment an absolute nullity, which is imprescriptible. *Id.*

Throughout the centuries, Louisiana courts have consistently held that the legislative list of grounds for absolute nullity (currently in La. C.C.P. art. 2002) is exclusive. *Blanck v. Speckman*, 23 La. Ann. 146, 147 (La. 1871) (holding that C.P. art. 606, the predecessor of La. C.C.P. art. 2002, provided the exclusive grounds for annulling a judgment for vices of form); *Accardo v. Dimiceli*, 226 La. 435, 76 So. 2d 521 (La. 1954) (holding that the vices of form listed in the predecessor to article 2002 "are exclusive; no other 'vice of form' will serve as a basis for an action to annul"); *Milner v. Milner*, 244 So. 2d 716 (La. App. 2 Cir. 1971), *writ refused*, 258 La. 198, 246 So. 2d 198 (1971) ("The cases appear to be uniform in holding the grounds for nullifying final judgments, which are enumerated by statute, are exclusive"); *Hollander v. Wandell*, 97-556 (La. App. 5 Cir. 11/12/97), 703 So. 2d 742 ("Article 2002 lists exclusive grounds for annulling a…judgment on the basis of form"); *Hebert v. Hebert*, 96-2155 (La. App. 1 Cir. 9/19/97), 700 So. 2d 958 ("Code of Civil Procedure article 2002 lists specific vices of form

15

that render a judgment absolutely null[;] [these grounds] are exclusive");[17]

*Miccol Enters., Inc. v. City of New Orleans,* 12-864 (La. App. 4 Cir. 12/19/12), 106 So. 3d 746 ("Specific vices of form that render a judgment absolutely null are provided in La. C.C.P. art. 2002, which is an exclusive list"); *Altemus v. Boudreaux*, 15-725 (La. App. 3 Cir. 12/23/15), 184 So. 3d 142, *writ denied*, 16-0157 (La. 3/24/16), 190 So. 3d 1197 ("The list of grounds for absolute nullity is exclusive").  Thus, the jurisprudence properly recognizes the exclusivity implied by La. C.C.P. art. 2001.  The grounds for *absolute* nullity of a final judgment are limited to vices of *form* as listed or implied in La. C.C.P. art. 2002.  Vices of *substance* result merely in a *relative* nullity.

Therefore, the fact that Earnestine Walker was wrongly recognized as the sole heir of Augustine Howard cannot *alone* make the 1996 JOP an absolute nullity.

---

[17] *Hebert*, *supra*, noted that a judgment against a person or entity not named as a defendant is an absolute nullity even though such is not explicitly stated in La. C.C.P. art. 2002.  *Wilson v. Champion Ins. Co.,* 607 So. 2d 1079, 1079 (La. App. 3 Cir. 1992) annulled a judgment against the Louisiana Insurance Guaranty Association ("LIGA") because it had not been named as a defendant to the action.  This is consistent with the exclusivity of the grounds set forth in La. C.C.P. art. 2002.  First, it is highly presumable that LIGA was not served since it was not named as a defendant. Second, La. C.C.P. art. 2002(A)(2) *presupposes* that the absolutely null judgment is against a defendant to the suit--rather than a nonparty.  *Hebert* also mentions Webster *v. Boh Bros. Const. Co.*, 603 So. 2d 761 (La. App. 4 Cir 1992), *on reh'g* (Sept. 21, 1992), which declared absolutely null a judgment which the trial court amended ***ex parte*** as to substance.  The trial court made this amendment pursuant to an ex parte motion which falsely claimed that the opposing party agreed to the amendment. *Id.*  This is also consistent with the exclusivity of La. C.C.P. art. 2002.  A final judgment substantively amended without the consent of all parties is: (1) a violation of subject matter jurisdiction; (2) a violation of La. C.C.P. art. 1951; and (3) when rendered *ex parte*, is also a violation of La. C.C.P. art. 2002(A)(2). The grounds recognized in *Wilson*, *supra*, and *Webster*, *supra*, are implied *a fortiori* by the grounds listed in the article. The Louisiana courts, however, have deemed a certain substantive vice to cause absolute nullity of a judgment; namely, in *Vogler v. Ayres*, 54,734 (La. App. 2 Cir. 8/17/22), 345 So. 3d 1184, this court reiterated that a judgment permanently relieving a parent of the duty to pay child support is absolutely null; such are usually consent judgments which merely judicialize absolutely null contracts.

16

**Liberative prescription**

*30-year prescription.* La. C.C. art. 3502 imposes a 30-year prescriptive period on the assertion of a right to inheritance:

> An action for the recognition of a right of inheritance and recovery of the whole or a part of a succession is subject to a liberative prescription of thirty years. This prescription commences to run from the day of the opening of the succession.

Comment (d) to La. C.C. art. 3502 states: "for the method of determining the day of 'opening of the succession', see C.C. Art. 934 (1870);" thereunder, "the succession…becomes open by death." Current La. C.C. art. 934 provides: "Succession occurs at the death of a person."

The appellants argue that, because Augustine Howard's succession opened when he died in 1956, Zephyr Johnson's right to claim inheritance from him prescribed in 1986 (i.e., a decade before Earnestine Walker procedurally opened the succession and claimed all the inheritance for herself). From that premise, the appellants conclude that La. C.C. art. 3502 bars the appellees' action.

We disagree. The appellants' argument, though correct about this prescription commencing at death,[18] misses the point: the appellees are not claiming *inheritance* from Augustine Howard or Zephyr Johnson. Rather, their claims are real actions--ownership of Tract 2 based on acquisitive prescription and onerous title inherited from Addie Edwards (through her purchase of Tract 2 from Zephyr Johnson and the operation of the after-acquired title doctrine).

---

[18] Comment (d) to La. C.C. art. 3502 states: "for the method of determining the day of 'opening of the succession', see C.C. Art. 934 (1870);" thereunder, "the succession…becomes open by death."

The appellants' argument may imply that the effect of the after-acquired title doctrine was held in abeyance until Augustine Howard's succession was probated, and then, was canceled by the exclusion of Zephyr Johnson from the 1996 JOP. Such an argument is without merit. Ownership by inheritance, whether testate or intestate, vests by operation of law at the moment of the decedent's death.[19] The doctrine of after-acquired title has been recognized in the jurisprudence of this state since before Augustine Howard died. *Waterman v. Tidewater Associated Oil Co.,* 213 La. 588, 35 So. 2d 225, 233 (1947). "When a vendor sells property which he does not own and later acquires title, ownership *immediately* vests in the buyer. This jurisprudential concept is known as the doctrine of after-acquired title." *Dorries v. Linder*, 51,070 (La. App. 2 Cir. 1/11/17), 211 So. 3d 1242 (emphasis added); *accord Rosewood Res., Inc. v. Jonesboro State Bank*, 535 So. 2d 1083 (La. App. 2 Cir. 1988).

Under the combined effect of the doctrine of after-acquired title and inheritance law, at the moment of Augustine Howard's death in 1956, ownership of Augustine Howard's former interest in Tract 2 immediately passed through the patrimony of Zephyr Johnson and into that of Addie Edwards.

For these reasons, La. C.C. art. 3502 does not apply to the appellees' claims concerned in this appeal.

**2-year prescription.** Neither does La. R.S. 9:5630 apply to appellees' declaratory judgment action or their petitory action. Subsection (A) of La.

---

[19] La. C.C. art. 934; *Tulane, supra*; *Succession of Coco*, *supra*; *Simpson, supra* (*citing Tulane, supra*, with approval); *Baten, supra*; *Biggs, supra.*

R.S. 9:5630 imposes a liberative prescription of two years on the assertion of certain rights:

> An action by a person who is a successor of a deceased person, and who has not been recognized as such in the judgment of possession rendered by a court of competent jurisdiction, to assert an interest in an immovable formerly owned by the deceased, against a third person, or his successors, who has acquired an interest in the immovable by onerous title from a person recognized as an heir or legatee of the deceased in the judgment of possession is prescribed in two years from the date of the *rendering* of the judgment of possession.[20]

La. R.S. 9:5630(C) defines third person:

> "Third person" means a person other than one recognized as an heir or legatee of the deceased in the judgment of possession.

*Id.* The elements are: (1) action by a person who is a successor of a deceased person but was not recognized as such in the JOP; (2) to assert an interest in immovable property formerly owned by the deceased; (3) against a third person who acquired his interest by onerous title from a person recognized in the JOP as an heir or legatee.

The phrase "successor of a deceased person" is not defined in the statute. We hold that this phrase means the *heirs* and/or *legatees* of a decedent, i.e., only those who *inherit by reason of the decedent's death*.[21] Addie Edwards was not a successor of Augustine Howard or Zephyr

---

[20] La. R.S. 9:5630 was originally passed in 1981 in response to *Succession of Brown, supra*. The legislature has amended this statute multiple times since then. Most recently, subsection (A) was amended effective August 1, 2018. Prior to this amendment, the prescriptive period began to run upon the "finality of the judgment of possession"— the amendment clarifies that this prescription begins to run upon "rendition" of the JOP, i.e., when it becomes a final judgment under La. C.C.P. arts. 1841 and 1911. La. R.S. 9:5630(B) establishes retroactivity but also grants a one-year grace period.

[21] "Prescriptive statutes are to be strictly construed against prescription and in favor of the claim sought to be extinguished." *South v. Olinde*, 55,770 (La. App. 2 Cir. 7/17/24), 399 So. 3d 548, *writ denied*, 24-01036 (La. 11/14/24), 396 So. 3d 62.

Johnson; rather, she acquired her interest in Tract 2 as a buyer in a contract of sale. Therefore, Addie Edwards's heirs and/or legatees cannot be "successors" of Augustine Howard or Zephyr Johnson within the meaning of La. R.S. 9:5630. As stated above, the legislature enacted La. R.S. 9:5630 with the goal of limiting by prescription the enforcement of the inheritance rights of heirs and/or legatees not recognized in a JOP. The appellees do not come within that class in regard to the 1996 JOP. Therefore, La. R.S. 9:5630 does not apply to the appellees' claims to Tract 2. This assignment of error lacks merit and is rejected.[22]

**Res judicata**

La. R.S. 13:4231 establishes Louisiana's doctrine of res judicata; in pertinent part, it states:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
> …
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The exceptor has the burden of proof. *Bond v. Bond*, 35,971 (La. App. 2 Cir. 4/3/02), 813 So. 2d 1148. The appellants assert that Judge

---

[22] Moreover, expiration of liberative prescription would not resolve the question of who owns Tract 2. That is because title is but one of the ways to acquire ownership of property, for, as the aphorism states, "possession is nine tenths of the law." The appellees have asserted ownership by acquisitive prescription. Simply put, an action asserting ownership through acquisitive prescription is never subject to liberative prescription. La. C.C. art. 481; comment (c) to La. C.C. art. 3502; *Buckley v. Catlett*, 203 La. 54, 13 So. 2d 384 (1943).

McCartney's judgments in trial court docket nos. 84,381-A and 56,028-A preclude the real actions that the appellees have asserted herein. As previously mentioned, those records from those trial court dockets are not in the record on appeal; only the judgments are included. Those judgments, according to the appellants, dismiss Ronnie Edwards's petitions to annul the 1996 JOP and a sheriff's sale of a title based thereon. Those petitions are not before us, but, legally, nullity actions are categorically distinct from the real actions asserted herein. Legally, a cause of action for nullity against a JOP or sheriff's sale arises from the respective transactions concerned, i.e., the succession proceedings or the sheriff's sale proceedings. The transaction giving rise to the appellees' declaratory judgment action (seeking to be recognized as owners by onerous title) is Zephyr Johnson's sale of Tract 2 to Addie Edwards. The occurrence concerned in the petitory actions asserting title by acquisitive prescription is possession of Tract 2 for the requisite period of time. Therefore, the appellants have failed to prove that res judicata bars the appellees' claims concerned herein.

**Summary judgment**

For all the foregoing reasons, the trial court was correct in denying the appellants' MSJ. Clearly, as non-owners, they are not "entitled to [a partition] judgment as a matter of law." La. C.C.P. art. 966.

## SUMMARY AND CONCLUSION

The appellees have proven that they have better title than the appellants. This does not make the 1996 JOP an absolute nullity. Instead, it negates the 1996 JOP's effect as evidence of Earnestine Walker's ownership of Tract 2. *Marsh, supra*. The Addie Edwards line of title has supremacy over the Earnestine Walker line of title.

The judgment of the trial court, as clarified herein, is **AFFIRMED**. Costs of this appeal, as well as costs in the trial court, are to be taxed to the appellants.

**AFFIRMED.**